IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM, ) | |
| ) | No. 3:15-cv-0846 |
| v. ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| RAPID RESPONSE MONITORING ) | |
| SERVICES, INC., et al. ) | |

## MEMORANDUM SUPPORTING MOTION TO DISMISS

Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell, by and through undersigned counsel and without waiving any objections to jurisdiction and venue, submit this Memorandum in support of their Motion to Dismiss:

### I. INTRODUCTION AND BACKGROUND

Craig Cunningham has filed 43 *pro se* lawsuits in this district since 2012. Most of these lawsuits are based upon alleged violations of the Telephone Consumer Protection Act[1], the Fair Debt Collection Practices Act[2], and/or the Fair Credit Reporting Act.[3,4] This present lawsuit stems from alleged violations of the Telephone Consumer Protection Act ("TCPA").[5] Specifically, Mr. Cunningham alleges that an unidentified overseas entity conducting "safety surveys" called him 28 times attempting to get him to take a safety survey, including 11 phone

---

[1] 47 U.S.C. §§ 227, *et seq.*
[2] 15 U.S.C. §§ 1692 *et seq.*
[3] 15 U.S.C. §§ 1681 *et seq.*
[4] Mr. Cunningham has also filed multiple lawsuits under these same statutes in the United States District Court, Northern District Court for Texas. *See Cunningham v. Advantage Cable Services, Inc. et al.*, Case No. 3:08-cv-01536-K; *Cunningham v. Advanta Corp. et al.*, 3:08-cv-01794-K; *Cunningham v. Credit Management LP et al.*, Case No. 3:09-cv-01497-G; *Cunningham v. Infinity Vacations LLC et al.*, Case No. 3:09-cv-02338-L.
[5] DE: 10

calls made on June 27, 2015.[6] Mr. Cunningham ultimately took the "safety survey" on June 27, 2015 to "ascertain the identity of the party placing these unsolicited calls."[7] Other than the June 27th phone call when Mr. Cunningham agreed to take the "safety survey" and the June 29th phone call with Kathy/Alyssa (outlined in the paragraph below), Mr. Cunningham does not provide clarification of the other alleged 26 phone calls.[8] There are no facts to determine whether these were missed calls, for example, whether messages were left, or the content of any messages.[9]

On June 29, 2015, Mr. Cunningham received a call from "Kathy" with Safeguard America informing him that he had been entered into a promotion as a result of taking the "safety survey" and that he had been chosen to receive a GE wireless security system at no charge.[10] According to Kathy, Mr. Cunningham would only be required to pay for the monitoring of the system.[11] Kathy then transferred Mr. Cunningham to "Alyssa" who claimed to be a promotional manager with Safeguard America.[12] According to Alyssa, Safeguard America would install the GE security system, "and the monitoring was through a different company called 'Rapid Response.'"[13] Mr. Cunningham was also given a website address for the company, which was www.gesafeguard.com.[14] Mr. Cunningham believes that this website is operated by Homeland Security, LLC, which is alleged to be an authorized dealer of Safeguard

---

[6] DE: 10, ¶ 13
[7] DE: 10, ¶ 14
[8] DE: 10
[9] DE: 10
[10] DE: 10, ¶¶ 14, 16
[11] DE: 10, ¶ 19
[12] DE: 10, ¶ 20
[13] *Id.*
[14] DE: 10, ¶ 21

America.[15] Mr. Cunningham does not allege that Rapid Response Monitoring Services, Inc. ("Rapid Response") or Mr. MacDonnell initiated any of the alleged phone calls or spoke with Mr. Cunningham at any time.[16]

As it pertains to Rapid Response and Mr. MacDonnell, the Amended Complaint fails to provide any facts to support the existence of liability, whether under the theory of direct liability or vicarious liability. Further, there are no facts to support piercing the corporate veil to allow a claim to proceed against Mr. MacDonnell. For these reasons, as set forth more fully herein, Mr. Cunningham's Amended Complaint should be dismissed. And, as set forth below, these Defendants have established that Mr. Cunningham filed this complaint against them in bad faith and therefore attorney's fees should be awarded for having defended this matter.

## II. STANDARD OF REVIEW[17]

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the *pro se* plaintiff.[18] However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief

---

[15] DE: 10, ¶ 21
[16] DE: 10
[17] The Standard of Review set forth in this Memorandum is the same as set forth in *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *2-3 (M.D. Tenn. Nov. 19, 2014) *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).
[18] *See Kottmyer v. Maas,* 436 F.3d 684 (6th Cir.2006); *Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir.1999); *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11–12 (6th Cir.1987).

and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[19]

The factual allegations supplied must be enough to show a plausible right to relief.[20] More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory.[21] The Court need not accept as true legal conclusions or unwarranted factual inferences.[22] Although Rule 8 of the Federal Rules of Civil Procedure does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions."[23] A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' "[24]

### III. ARGUMENT

**1. Mr. Cunningham's *pro se* status.**

In *Cunningham v. Kondaur Capital*, this Court noted the following as it pertains to a litigant's *pro se* status and how specifically applied against Mr. Cunningham:

> The plaintiff's status as a *pro se* litigant requires the Court to view his pleading with some measure of a liberal construction. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991). However, the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996). "Neither this Court nor other courts ... have been willing to abrogate basic

---

[19] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *See% also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[20] *Twombly,* 550 U.S. at 555–61.
[21] *Id.; Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436–37 (6th Cir.1988).
[22] *See Gregory v. Shelby Cnty.,* 220 F.3d 433, 446 (6th Cir.2000), *abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).
[23] *Iqbal,* 566 U.S. at 678–79.
[24] *Id.* at 678 (quoting *Twombly,* 550 U.S. at 557).

pleading essentials in *pro se* suits." *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989) (citing cases).

Additionally, the Court takes notice that the plaintiff, although proceeding *pro se,* has filed no less than 11 other lawsuits in this District alone since 2012, alleging claims under the TCPA, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et *seq.,* and/or the Fair Credit Reporting Act 15 U.S.C. §§ 1681 et *seq.* As evidenced by his numerous lawsuits and by the substance of his filings, his instant foray into litigation is significantly unlike the ordinary *pro se* plaintiff who makes a one time appearance into the realm of unfamiliar legal proceedings.[25]

**2.    Mr. Cunningham's Amended Complaint fails to establish sufficient facts to state a claim under 47 U.S.C. § 227(b),** *i.e.***, that he received a phone call** *from an automatic telephone dialing system or used an artificial or prerecorded voice***.**

"The essential allegations required to plead a claim under Section 227(b)(1)(A)(iii) are simple: the plaintiff must allege that: 1) he received a text or phone call on a telephone number assigned to a cellular telephone service, and 2) the text or phone call was made with an automatic telephone dialing system or used an artificial or prerecorded voice."[26] In the present case, Mr. Cunningham alleges he received multiple phone calls to his cell phone, thus satisfying the first element.[27] But, Mr. Cunningham fails to allege sufficient facts to establish the second element: that the calls were placed with an automatic dialing system or used an artificial or prerecorded voice. Again, the opinion in *Cunningham v. Kondaur Capital* provides guidance on this issue.[28] Specifically, in addressing Mr. Cunningham's complaint in that case, this Court held:

> As to the second element, the plaintiff's allegation consists of a minimal statement that the text messages were of an "automated nature." See Complaint, at 4. Even though minimal allegations of the use of an automatic telephone dialing system have been found sufficient to satisfy the Rule 12(b)(6) standards, *see Peatrowsky v. Persolve*, 2014 WL 1215061, *4 (D.Nev. Mar.24, 2014); *Robinson v. Midland Funding, LLC*, 2011 WL 1434919, *3 (S.D.Cal. Apr.13, 2011), the plaintiff's allegation borders on being only a mere recitation of the required element. **However, the plaintiff's factual allegations about the text messages indicate that the messages were repeated within a short span of time and consisted of**

---

[25] Cunningham v. Kondaur Capital, No. 3:14-1574, 2014 WL 8335868, at *3.
[26] *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *6 (citations omitted).
[27] DE: 10, ¶¶ 24, 25
[28] *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *6.

**the same content.** *Id.* at 2. These additional allegations are sufficient to bring his complaint above the minimum level required to generally state a claim under the TCPA. See *Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1130 (W.D.Wash.2012) (allegation regarding the generic content and automatic generation of message is sufficient to infer the use of an automatic telephone dialing system); *Johansen v. Vivant, Inc.*, 2012 WL 6590551, *3 (N.D.Ill.Dec.18, 2012) (a description of telephone messages in laymen's terms or of the circumstances surrounding the messages would satisfy basic pleading standards for TCPA claims). *But see Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, *2 (S.D.Cal. June 13, 2013) (allegations that text messages were generic and impersonal was not sufficient to allege that they were sent by use of an automatic telephone dialing system).[29]

In *Kondaur,* this Court found that the complaint barely set forth sufficient facts to push the allegations past the fine line of merely reciting the necessary elements of the claim because the text messages were sent in a short time span and consisted of the same content.[30] Similar allegations are not present in this case. The *Kondaur* Court appeared to place great weight in the fact that the content of the messages was the same in deciding the complaint satisfied the requirements of Rule 8. The only allegations that could be relevant to the second element in this action are that Mr. Cunningham received 11 phone calls on June 27th and a total of 28 phone calls altogether.[31] There are no allegations of generic content or even of voice messages being left for Mr. Cunningham. Without any further factual content, Mr. Cunningham's Amended Complaint fails to establish the necessary second element for a claim under 47 U.S.C. § 227(b) and this claim should therefore be dismissed.

3. **The Amended Complaint is clear in that neither Rapid Response nor Mr. MacDonnell initiated the alleged calls in the Amended Complaint; therefore, there can be no claim of direct liability under the TCPA.**

---

[29] *Id.* (emphasis added).
[30] *Id.*
[31] DE: 10, ¶¶13, 14

Mr. Cunningham brings claims under 47 U.S.C. § 227(b) and (c) against Rapid Response and Mr. MacDonnell under the theories of direct and vicarious liability.[32] In a letter brief adopted by the Eleventh Circuit (*Sarris* Letter Brief)[33], the FCC distinguished between calls and faxes in the context of analyzing direct and vicarious liability under the TCPA.[34] In doing so, the FCC makes clear that direct liability for phone calls is only available against the person that initiates the call (the telemarketer), not the person "on whose behalf" the call is allegedly made.[35]

> The TCPA makes it unlawful, subject to certain exceptions, for any person within the United States to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice … without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Such artificial or prerecorded voice calls are commonly referred to as "robo-calls." The statute also authorizes the FCC to establish a national do-not-call registry that consumers can use to notify telemarketers that they object to receiving telephone solicitations. 47 U.S.C. § 227(c)(1)-(4). The FCC's implementing regulations provide – again, subject to exceptions – that no person or entity may "initiate any telephone solicitation … [to any] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).
>
> In identifying the party that "initiates" calls in violation of these robo-call and do-not-call-registry prohibitions, the Commission's rules distinguish between the "telemarketer" and the "seller." The Commission defines the "telemarketer" as "the person or entity that *initiates* a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11) (emphasis in original). By contrast, the "seller" is defined as "the person or entity *on whose behalf* a telephone call or message *is initiated* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. § 64.1200(f)(9) (emphasis in original). Thus, for example, in the *DISH Network* context, *DISH* was the seller and its third-party telemarketers were the parties that initiated calls promoting *DISH's* satellite television services.[36]

Ruling from the Sixth Circuit and this Court are consistent with the FCC's interpretation of the availability of direct liability in TCPA cases involving alleged robo-calls and violations of

---

[32] DE: 10, ¶¶ 25-34.
[33] *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015)
[34] Letter Brief attached to Motion as Exhibit A.
[35] *Id.*
[36] *Id*.

the do-not-call-registry. Relying upon the Sixth Circuit's opinion in *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 468 (6th Cir.2010) and the FCC's ruling in I*n re Dish Network, LLC*,[37] this Court recently held that direct liability under 47 U.S.C. § 227(b) and (c) applies only to entities that initiate the phone calls.[38] Specifically, the FCC's ruling makes clear that:

> Our rules have long drawn a distinction between the telemarketer who initiates a call and the seller on whose behalf a call is made. In accordance with those rules, as we explain below, we clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.[39]

In this case, the Amended Complaint makes clear that neither Rapid Response nor Mr. MacDonnell initiated the calls. Specifically, Mr. Cunningham claims that he received calls from an unknown overseas entity[40] and from Security Systems, Inc. dba Safeguard America.[41] The only allegation concerning Rapid Response is that it is referenced as the monitoring company for the alarm system being offered to Mr. Cunningham.[42] There are no allegations concerning Mr. MacDonnell's involvement other than the following conclusory allegations:

> 27. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.
>
> 30. Similarly, the calls were placed with apparent authority, actual authority, and the ratification of Rapid Response, UTC, Homeland Security, and Security Systems

---

[37] 28 F.C.C. Rcd. 6574, 6582, ¶ 24 (2013), *pet. for review dismissed, DISH Network, LLC v. FCC*, 552 Fed. Appx. 1 (D.C. Cir. 2014).
[38] *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *5
[39] *Id.*, citing 28 F.C.C. Rcd. at 6582, ¶ 24; *Smith v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 3906923 at *3 (N.D.Ill. Aug.11, 2014); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, *4 (E.D.Mo. May 20, 2014).
[40] DE: 10, ¶ 13
[41] DE: 10, ¶ 14
[42] DE: 10, ¶ 20

Inc. dba Safegaurd America, and the respective executives/officers of the corporation. […].[43]

Disregarding for the moment the unsupported nature of these conclusory allegations, these allegations do not allege that Rapid Response or Mr. MacDonnell *initiated* the calls. Therefore, based upon the FCC's interpretations of the TCPA and this Circuit's precedent, Rapid Response and Mr. MacDonnell cannot be held directly liable. Therefore, any claims based upon direct liability should be dismissed. The more appropriate theory under which Mr. Cunningham's claims should be analyzed is under vicarious liability, which is addressed below.

**4.    The Amended Complaint fails to set forth sufficient facts to support a claim of vicarious liability.**

Once again, the *Kondaur* case provides guidance on whether a complaint sufficiently alleges facts to establish vicarious liability in a TCPA case.

> The plaintiff's allegations as to the vicarious liability of Defendant Kondaur, however, are insufficient to state such a claim. The FCC's declaratory ruling in *In re Dish Network, LLC* supports use of the theory of vicarious liability for a claim of TCPA violations under agency principles, including formal agency, apparent authority, and ratification. *See* 28 FCC Rcd. at 6584, ¶ 28. As the FCC has stated:
>
>> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control ." Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

---

[43] DE: 10, ¶¶ 27 and 30

*Id.* at 6586–87, ¶ 34.

However, the mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough. *Iqbal*, 556 U.S. at 678. There must sufficient factual allegations pled to support a plausible claim against the defendant based upon those facts. *Id*. The plaintiff's Complaint simply does not contain such facts. There are no factual allegations that Defendant Kondaur itself had any interaction with the plaintiff, and the plaintiff alleges only that he spoke with entities identified as the 800 Resources Group and Park View Law. Further, although the plaintiff alleges that he was told by these entities that they were "prospecting for leads" for Kondaur and that information would be forwarded to Kondaur "for the purposes of obtaining a mortgage," there are no factual allegations showing that these entities were in fact acting at the directive of or on behalf of Kondaur. There are also no factual allegations that the plaintiff was transferred to Kondaur during the telephone calls, that Kondaur subsequently contacted the plaintiff in any manner as a result of the telephone calls, or any other allegations from which it could reasonably be inferred that Kondaur was provided information about the plaintiff from the 800 Resources Group and Park View Law or that Kondaur was a de facto participant in the telephone calls.

A formal agency relationship arises when "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *See Restatement (Third) Agency § 1.01 (2006)*. There are no factual allegations showing that Defendant Kondaur had any control over the 800 Resources Group and Park View Law or had given them actual authority to act on its behalf. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." *See Restatement (Third) of Agency § 2.03*. Apparent authority is based upon some act by the principal that creates the appearance that it has granted authority to a purported agent. *See Central States S.E. and S.W. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1113 (6th Cir.1986) (en banc ). There are no facts alleged that Defendant Kondaur itself took any actions as a principal that would have caused the plaintiff to believe that the 800 Resources Group and Park View Law had apparent authority to act on Kondaur's behalf. Finally, there are no allegations showing that Defendant Kondaur ratified the actions of the 800 Resources Group and Park View Law or accepted the benefits of their actions in any manner. Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *See Restatement (Third) of Agency § 4.01(1)*.

Even though the plaintiff's factual allegations are construed as true when reviewing the motion to dismiss, the plaintiff must "do more than create speculation or suspicion of a legally cognizable cause of action; [he] must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d

523, 527 (6th Cir.2007) (citing *Twombly*, 550 U.S. at 555). While the plaintiff argues that Defendant Kondaur should be held vicariously liable based upon its purported involvement in the texts he received and/or because of the plaintiff's belief that Kondaur was the intended beneficiary of any information gleaned from his return telephone calls, the plaintiff's actual allegations against Defendant Kondaur are based upon unsupported speculation and are not sufficient to show the existence of facts that would support vicarious liability. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 3906923, *7–9 (N.D.Ill. Aug.11, 2014) (plaintiff's allegations were not sufficient to plead a plausible basis for vicarious liability); *Freidman*, 2013 WL 3026641, at *3. The motion to dismiss should be granted.[44]

Applying the reasoning set forth *supra* to the present case mandates the same conclusion: Mr. Cunningham's Amended Complaint fails to set forth sufficient facts to establish vicarious liability. There are no factual allegations showing that Defendants Rapid Response and/or Mr. MacDonnell had any control over Safeguard America (or any other entity that initiated the calls) or had given them actual authority to act on their behalf. Therefore, the Amended Complaint fails to establish actual authority. There are no facts alleged that Defendants Rapid Response and/or Mr. MacDonnell themselves took any actions as a principal that would have caused Mr. Cunningham to believe that Safeguard America (or any other entity that initiated the calls) had apparent authority to act on their behalf. Finally, there are no allegations showing that Defendants Rapid Response and/or Mr. MacDonnell ratified the actions of Safeguard America (or any other entity that initiated the calls) or accepted the benefits of their actions in any manner. Stated simply, there are no facts in the Amended Complaint that are sufficient to unlock the doors of discovery and allow this case to proceed against these Defendants on a vicarious liability theory of recovery. Therefore, all claims against these Defendants under the TCPA should be dismissed.

**5. The Amended Complaint fails to set forth any facts that would support piercing the corporate veil, which is required to establish liability against Mr. MacDonnell.**

---

[44] *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *6-8.

Mr. MacDonnell is the CEO for Rapid Response. In Tennessee, "a corporate director, officer or employee, if acting within the scope of their authority for the interests of the corporation should not be held liable because their action is treated as that of the corporation." Rennell v. Through the Green, 2008 WL 695874, at * 8 (Tenn.Ct.App. Mar.14, 2008) (citing Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn.2006)). However, a "corporation's separate identity may be disregarded or 'pierced' ... upon a showing that it is a sham or a dummy or where necessary to accomplish justice." Oceanics Sch., Inc. v. Barbpour, 112 S.W.3d 134, 140 (Tenn.Ct.App.2003). "When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as ... a controlling shareholder, where the two entities are in fact identical or indistinguishable[.]" Pamperin v. Streamline Mfg., Inc., 276 S.W.3d 428, 438 (Tenn.Ct.App.2008).

Mr. Cunningham's Amended Complaint lists no facts that would survive Rule 8 requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Without more, Mr. Cunningham's claim against Mr. MacDonnell should be dismissed.

**6.  Mr. Cunningham's initiation of this action against Rapid Response and Mr. MacDonnell is in bad faith and, as such, they should be awarded their attorney's fees for having to defend this baseless lawsuit.**

Finally, Rapid Response and Mr. MacDonnell request that they be awarded reasonable attorney fees because Mr. Cunningham filed this case in bad faith. *See* 15 U.S.C. § 1692k(a)(3). Under § 1692k(a)(3), a defendant must affirmatively show the plaintiff acted in bad faith and for purposes of harassment. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985). Such proof exists in this case.

Initially, Mr. MacDonnell was sued solely because he is the CEO of Rapid Response. There is not a single factual allegation listed in the Complaint that shows Mr. MacDonnell took

any actions, or failed to act, in any way that caused harm to Mr. Cunningham. Further, Rapid Response is only in this lawsuit because Mr. Cunningham elicited the name of the monitoring company from "Alyssa" with Safeguard, apparently in an attempt to bring more parties into the lawsuit.[45] Specifically, at the 00:14:04 mark in the audio file made an exhibit to this Motion to Dismiss, Mr. Cunningham asks Alyssa, "I was just wondering, for the monitoring service, who is that through? Is it ADT, or…?"[46] Alyssa responds by saying, "Oh no, no, no. We are a different company than ADT. Our monitoring station is Rapid Response."[47] She follows by saying "We are Safeguard America, we do install a GE security system in your home. And the monitoring station is out of Rapid Response and they have an A+ rating with the BBB."[48] This type of baiting by Mr. Cunningham should not be overlooked. Therefore, Defendants request that this Court award reasonable attorney fees be awarded to them for having to defend this claim.

**IV.    CONCLUSION**

For the reasons set forth herein, Mr. Cunningham's Amended Complaint against Rapid Response and Mr. MacDonnell should be dismissed.

> Respectfully submitted,
>
> ORTALE, KELLEY, HERBERT & CRAWFORD
>
> /s/ Michael T. Schmitt
> Michael T. Schmitt, BPR #026573

---

[45] Attached as Exhibit B to the Motion to Dismiss is the audio recording provided by Mr. Cunningham. Although a Rule 12 Motion is based on the pleadings, review of this audio file is appropriate in considering whether Mr. Cunningham's conduct was in bad faith.
[46] *Id.*
[47] *Id.*
[48] *Id.*

P.O. Box 198985
Nashville, TN  37219-8985
(615) 256-9999
*Attorney for Rapid Response Monitoring Services, Inc. and Russell MacDonnell*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on October 8, 2015 a true and exact copy of this Memorandum has been served through the United States Mail, Return Receipt Requested, on the following:

Craig Cunningham
5543 Edmondson Pike
Suite 248
Nashville, TN 37211
*Pro se Plaintiff*

Furthermore, on this same date, a true and exact copy of the foregoing was served on the following through the Court's CM/ECF system upon the following:

Stephen D. Barham, Esq.
Jeffrey Maddux, Esq.
Chambliss, Bahner & Stophel, P.C.
Liberty Tower - Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
*Attorneys for Homeland Security, LLC,*
*Coursey and Keith.*

        /s/ Michael T. Schmitt
        Michael T. Schmitt