United States District Court
Middle District Tennessee

)    Craig Cunningham
)    Plaintiff, Pro-se
)
)         v.                  **CIVIL ACTION NO.** 3:15-cv-00846
)
) Rapid Response Monitoring Services, Inc. et al
)      John/Jane Doe 1-10
)    Defendants.

**Plaintiff's Response in Opposition to the Defendants' Motions to dismiss subject to the Plaintiff's Motion for Leave to amend and Motion for a stay pending discovery on Personal Jurisdiction**

1. The Plaintiff's in this case hereby files this opposition to the Defendants' motions to dismiss subject to the Plaintiff's Motion for a stay and Motion for leave to amend his complaint.

**General Objections**

2. The Plaintiff has filed a motion to stay these motions to dismiss pending discovery on the issues of personal jurisdiction which all the defendants have alleged. The Plaintiff should be allowed an opportunity to conduct discovery on this issue and has produced an affidavit in support of this.

3. The Plaintiff personally knew the agent of Safeguard America that came to install the alarm system in question. The Plaintiff had this agent of Safeguard America do work for him in the past installing electronic strike locks as well as a magnetic lock and access keypad.The Plaintiff knows this person to be a Tennessee resident and knows that the individual was hired by Security Systems, Inc., dba Safeguard America and was workingon behalf of Safeguard America and Rapid Response Inc and

1

Homeland Security, Inc to install Alarm Systems sold in the State of Tennessee to Tennessee residents. Hiring Tennessee residents to install your products/services is sufficient to establish personal jurisdiction.

4. Additionally, the Plaintiff has evidence he was called by agents of Homeland Security, Rapid Response, and Safeguard America, and courts have held that a single phone call into the forum state is sufficient to establish liability under a TCPA claim.

5. The Plaintiff should be allowed to conduct discovery on these personal jurisdiction issues in this case.

6. The Plaintiff has also filed a motion for leave to amend which addresses the alleged deficiencies with the Plaintiff's complaint and would otherwise render the motions to dismiss moot. The motions to dismiss should be denied on this point alone.

**Rapid Response Monitoring Services, Inc., and Russell MacDonnell's**

**Motion to Dismiss**

7. The Plaintiff opposes the Motion to dismiss by Rapid Response and Russell MacDonnell for the following reasons:

**The Plaintiff CAN establish he was called using an automated telephone**

**dialing system.**

8. In the Plaintiff's most recent complaint attached to his motion for leave to amend, the Plaintiff has clearly alleged additional facts and elements regarding the calls in question. The Plaintiff has stated the time, dates, calling number and recieved number, and additional analysis as to how

2

the Plaintiff ascertained that the calls were initiated by an automated telephone dialing system, for example the rapid fire nature of the calls being placed, some within 1 or 2 seconds of each other: "*Additionally, many of the calls were placed literally 1 or 2 seconds apart is not humanly possible and can only be done via a computer, for example on June 19, calls were recieved at 23:21:23 and again one second later at 23:21:24 or on June 18th, calls were recieved at 23:08:26 and again at 23:08:28, two seconds later. It is beyond the realm of human capabilities to place calls to the same number and is characteristic of an automated telephone dialing system to have rapid fire calls placed in less time that it takes to manually dial the number.*"

9. The Plaintiff isn't required to go into extreme detail and minutae regarding every possible detail regarding each and every phone call, particularly in the absence of discovery and at the initial pleading stage, but all of the calls were missed and no voicemails were left except for the last call the Plaintiff answered on June 27th 2015. The Plaintiff has the calls recorded and phone records are available to support any and all elements the Defendants may want to examine. This sort of nit picking can all be resolved with a simple discovery request, which the Plaintiff is happy to substantively and fully respond to.

**The Plaintiff need not allege the calls were directly placed to him by Defendants Russell MacDonnell and Rapid Response to establish liability against these defendants.**

3

10. As stated in the Plaintiff's pending motion for leave and amended complaint, the Plaintiff isn't required to allege direct liability or that the defendants MacDonnel and Rapid Response individually placed the calls. Courts in the 6th circuit have held that authorizing illegal faxes or telephone calls and paying for those illegal advertisements is sufficient to establish liability. *In this case, the Defendants authorized and paid for the advertisement to be faxed to thousands of recipients. As the senders, they are responsible for these faxes.* see Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

11. As a party in line to directly benefit and profit from the sale of alarm services, they would naturally be vicariously liable for the calls which advertise their services for which they would directly profit.

12. Dismissal is improper at this stage even without direct liability for these parties as the Plaintiff can establish vicarious liability for these parties in accordance with the FCC's declaration in the Dish network case and as the defendants have conceded.

**The Plaintiff's has established the facts and elements sufficient to allege vicarious liability in his most recent amended complaint pending before the court as an attachment to the Motion for leave to amend.**

13. In the Plaintiff's most recent motion for leave to amend, the Plaintiff expands in great detail and alleges sufficient facts to establish allegations supporting vicarious liability against Russell MacDonnel and Rapid

4

Response under the theories of actual authority, apparent authority, and ratification.

14. The Plaintiff alleges the existance of a contractual relationship between Rapid Response and Safeguard America, which counsel for the defendants has confirmed does exist, and that this contract establishes actual authority that Safeguard America is acting on behalf of Rapid Response in procuring leads and customers for alarm monitoring services.

15. Furthermore, the recording provided by the defendants in their motion is further proof of the involvement of Rapid Response and Defendant MacDonnell in this case as the agent confirm that the monitoring services will be provided by Rapid Response and the Plaintiff would be making payments to Rapid Response. Alternatively, one need look no further than the website of Defendant Safeguard America, www.safeguard.com, where they state *"We are an authorized GE Security Pro Dealer and offer our customers 24/7/365 monitoring by Rapid Response Monitoring with on the go and cellular communicator capabilities through Alarm.com."*

16. The Plaintiff has alleged sufficient facts to establish vicarious liability under the doctrine of Apparent Authority. Pursuant to the elements established by the FCC for a court to consider when evaluating an allegation of Apparent authority, the Plaintiff has properly stated a claim for vicarious liability in his motion for leave to amend and amended complaint.

17. *According to the FCC, there are several examples of evidence that might be relevant in a finding of apparent authority: 1. Access to detailed*

5

*information regarding the nature and pricing of the seller's products and services 2. the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems 3. the authority to use the seller's trade name, trademark, and service mark, and 4. that the seller approved, wrote or reviewed the outside sales entity's telemarketing scripts and 5. if the seller knew or should have known that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to stop.* [1] The FCC recommends using a totality of the circumstances approach to a finding of apparent authority.

18. The Plaintiff has alleged sufficient facts to establish a showing of vicarious liability under the doctrine of ratification by alleging that Rapid Response is knowingly accepting the benefits of the illegal actions of Homeland Security and Safeguard America by accepting the customers generated by the complained of telephone calls.

19. In summary, the Plaintiff has alleged sufficient facts to establish a claim on the grounds of vicarious liability against the defendants Rapid Response and Russell MacDonnell.

**Rapid Response and Defendant Russell MacDonnell should be held vicarious liable as any other finding would undermine the deterrent effect and purpose of the TCPA.**

---

[1] see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015) citing Dish 2 FCC Rcd at 6592.

6

20. As noted in Jackson v Caribbean Cruise Line, 2:2014-cv-02485,
document 83 (2015) "*a number of courts have considered whether a
defendant my nonetheless be held vicariously liable under the TCPA in
accordance with traditional tort principles. The overwhelming majority have
answered that question in the affirmative.*" additionally, the court held that
"*Some courts have looked to th purpose of the TCPA and found that to
hold otherwise, that is to decline to recognize potential vicarious liability
under the statute would undermine its deterrent effect. See Bank, No. 12-
cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA
liability by merely hiring a different company to make unlawful calls, the
statute would lose its deterrent effect. Vicarious liability prevents this
liability maneuvering*") and cited "*Birchmeier v Caribbean Cruise Line, Inc.,
No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec 31, 2012)
("To offer an example, suppose that A, a well heeled entity wants to sell a
product or service, stands next to B, an impecunious defendant, and
directs B to place unsolicited, prerecorded calls to consumers on their cell
phones. Defendants' position, it appears, is that only B, th impecunious
dialer, would be liable, and that A would get off scot-free. A Congressional
enactment that permitted this would be absurd indeed. Fortunately that is
not the law under the TCPA*")

21. Under this rationale, doing anything other than holding Safeguard
America, Homeland Security, and Rapid Response as vicariously liable for
the actions of the distributors hired to place illegal telemarketing calls on

7

behalf of the defendants., would lead to an absurd result allowing the defendants to get off scot-free, undermine the deterrent effect of the TCPA, and run counter to the overwhelming majority of courts that have reviewed similar TCPA decisions.

**The Plaintiff need not pierce the corporate veil to impute liability to Mr. MacDonnell as a corporate officer.**

22. Multiple courts going back several years, including courts in the 6th Circuit have held that it is not necessary to pierce the corporate veil in a TCPA action to hold a corporate officer liable for violations of the law. *Although the Sixth Circuit has not ruled on this issue, many courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" Van Sweden Jewelers, Inc. v. 101 VT, Inc., No. 1:10-cv-253, 2012 WL 4074620 (W.D. Mich.) (quoting Texas v. Am. Blastfax, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); see also, e.g., Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011)* [2]

23. In the Plaintiff's motion for leave and amended complaint, the Plaintiff cites 5th Circuit COA precedent in a TCPA case where the court held: In Texas v American BlastFax, Inc., the 5th Circuit COA held *"However, if the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable"*, citing US v Pollution Serv. of Oswego, Inc., 763 F.2d 133, 134-35 (2nd Cir 1985) additionally, the court held "The "well-settled" tort rule provides that "when corporate officers directly participate in or authorize the commission of a

---

[2]**Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC,** No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

8

wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."

24. Additionally, courts in the 6th circuit have ruled directly on the issue and found corporate officers can be liable in a TCPA case without piercing the corporate veil: "*The Defendants do not dispute that Beason personally participated in the payment of and authorization for the fax ads. As a result, he is personally liable for the violation of the TCPA*"[3]

25. The Plaintiff alleges direct participation on the part of Russell MacDonnel in this case and as such he should be held liable for his actions. Nothing more is required with a TCPA claim, and thus piercing the corporate veil is irrelevant.

**The defendant's claims that the case was filed in bad faith is laughably absurd and unsupported by any authority, particularly given the creative "baiting" claim.**

26. In a strange twist, the Defendants attempt to argue that the Plaitiff brought this case in bad faith under the FDCPA standard, which is 15 USC 1692k(a)(3), even though this case has nothing at all to do with illegal debt collection actions and no violations of the FDCPA are alleged.

27. A defendant claiming bad faith *"must show the Plaintiff's conscious doing of a wrong because of a dishonest purpose or moral obliquity"* See Shah v Collecto, Inc., No. Civ A. 2004-4059, 2005, WL 2216242 at 14 (D. Md. Sept 12, 2005) (Quoting Black's Law dictionary, 139 (6th ed. 1990))

---

[3]Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

9

28. A bad faith Lawsuit is one *"where the suit is so completely without hope of succeeding that the court can infer the plaintiff brought the suit to harass...rather than to obtain a favorable judgment"* see Grant v. Barro, No. 07-194-JJB-DLD, 2007 WL3244986, at *1 (M.D. La. Nov. 1, 2007)

29. The gaping hole in this entire "baiting" argument is that the during this conversation with Alyssa of Safeguard America, at least 28 other violating calls had previous to the so called "baiting" call, on June 27th 2015. How can someone presumably be baited into violating the law in the past? The 28 offending calls initially occured on June 17th, 18th, 19th, 26th, and 27th of which the Plaintiff answered none and spoke to nobody, except the last call on June 27th all in 2015 during with the Plaintiff allegedly "baited" the defendants, violated every law of physics by reversing time, and tricked the defendants into calling him for the prior 10 days apparently.

30. At the point of this conversation, on June 29th 2015, the die was cast, the goose was cooked, and liability of Rapid Response was already established as Rapid Response and Russell MacDonnell were beneficiaries of the illegal telemarketing calls. One could presumably make the argument that they were induced or baited into calling if the Plaintiff took some action before the calls took place, which resulted in calls occuring such as giving consent to be called, but it is illogical to retroactively claim you were baited into placing illegal telemarketing calls in a conversation that took place *after* the initial violating calls took place.

10

31. The Plaintiff has every intenton of suing every liable party that placed the calls or stands in line to profit and benefit from the calls placed on their behalf as the law allows, therefore Rapid Response was going to be sued as a liable party for calls placed on their behalf and for their benefit to sell alarm monitoring services, regardless of when and how the Plaintiff found out.

32. It doesn't matter if the Plaintiff did a "John Doe" lawsuit and discovered Rapid Response's involvement after serving subpoenas or if the Plaintiff just went to Safeguard America's website www.safeguardamerica.com, where they state: *"We are an authorized GE Security Pro Dealer and offer our customers 24/7/365 monitoring by Rapid Response Monitoring with on the go and cellular communicator capabilities through Alarm.com."* or the Plaintiff happened to read on Security Systems News where on August 10th, 2015 an article featuring Mark Tosoni, GM for Safeguard America where the article states *"SafeGuard, an authorized GE Security Pro Dealer, has been in the residential and fire security business for two decades. Rapid Response Monitoring monitors the company's accounts."*[4] or if the Plaintiff sued only Safeguard American and discovered the role of Rapid Response through the conventional discovery process and amended his complaint to add them as a defendant.

33. One way or another, the involvement of Rapid Response was coming out and Rapid Response was going to get sued sooner or later.

---

[4] see http://www.securitysystemsnews.com/article/industry-veteran-author-offers-advice-selling

34. If anything, the defendants seemed miffed that the Plaintiff discovered their role in this scheme pre-suit and are trying to do anything retaliate and levy some claim no matter how poorly crafted and frivilous to hold some liability over the Plaintiff's head in an attempt to coerce the Plaintiff into settling for a trivial amount of money. Doing research into the liable parties pre-suit can hardly be described as bad faith and is a requirement per rule 11 of the FRCP.

35. Furthermore, the defendant's don't deny that Russell MacDonnell is the proper party and owner of Rapid Response, the defendants don't deny (and actually confirmed to the Plaintiff) that Rapid Response is contracted with Safeguard America to provide monitoring services for Safeguard America customers, the defendant's don't deny that Rapid Response would profit from alarm monitoring services sold by Safeguard America on their behalf, the Defendants don't deny that the calls were placed on their behalf or for their benefit, and the defendant's don't deny that an agent of Safeguard America placed 28 phone calls to the Plaintiff's cell phone before the involvement of Rapid Response was established.

36. Lastly, there is no established standard for "baiting", whatever that is supposed to mean, and if anything this appears to be a twisting of at best the affirmative defense of consent and huge leap in logic and law from an affirmative defense to a counter-claim regarding non-alleged and inapplicable claims under the FDCPA, 15 USC 1692 et seq.

12

37. Although not established under the TCPA or FDCPA, the so called "baiting" referred to and sole linchpin in this spurious argument is that the Plaintiff inquired as to the identity of other liable parties that would benefit from the illegal telemarketing calls. The defendants fail to state how asking for the identity of the party on whose behalf the calls are being placed, which the defendants are legally required to state per 47 CFR 64.1200(b) and 47 CFR 64.1200(d), on June 29th 2015 somehow baited them into calling the Plaintiff on the prior calls on June 17th, 18th, 19th, 26th, and 27th 2015 *before* the conversation on June 29th took place?

38. The Plaintiff merely inquired about other potentially liable parties, as it is common for a monitoring company to partner with a reseller of alarm equipment and both would be liable if their products/services are being sold through an illegal telemarketing call. It doesn't matter how or when the Plaintiff found out that Rapid Response is a liable party in this case, just so long as it is reasonable to conclude that Rapid Respone's services were being offered in the call. There is nothing the Plaintiff could do or say that would make Defendant Rapid Response any more or less liable, particularly after the offending calls had occured.

39. In summary regarding the Motion to Dismiss by Rapid Response and Russell MacDonnell, the defendant's Motion to dismiss should be denied.

**In Response to the Motion to Dismiss by David Roman**

40. The Plaintiff contends the Motion to Dismiss by David Roman should be denied.

13

41. As an intiial note, Defendant David Roman claims he was never served with the complaint, but this is absurd as he refused to pick up the certified letter served upon him and was returned with the notation "unclaimed" from the USPS.

42. This constitutes service per the Tennessee rules of civil procedure as he was properly served as an out of state defendant via USPS certified mail with return reciept and yet he refused to sign for the letter demonstrating conscious knowledge of the contents and refusal of service. Now in their motion to dismiss, Defendant Roman has the gall to claim he wasn't served with a document he refused to accept.

43. This will be included as a seperate exhibit to the motion.

**The Plaintiff need not allege the calls were directly placed to him by Defendant David Roman and Security Systems, Inc. to establish liability against these defendants.**

44. As stated in the Plaintiff's pending motion for leave and amended complaint, the Plaintiff isn't required to allege direct liability or that the defendants Safeguard and Roman individually placed the calls. Courts in the 6th circuit have held that authorizing illegal faxes or telephone calls and paying for those illegal advertisements is sufficient to establish liability. *In this case, the Defendants authorized and paid for the advertisement to be faxed to thousands of recipients. As the senders, they are responsible for these faxes.* see Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

14

45. As a party in line to directly benefit and profit from the sale of alarm services, they would naturally be vicariously liable for the calls which advertise their services for which they would directly profit.

46. Defendant Roman in his affidavit doesn't deny that he hired individuals to place telephone calls to Tennessee residents, including the Plaintiff, as alleged. Defendant Roman doesn't deny in his affidavit that he sells alarm systems to Tennessee residents as alleged. Defendant Roman in his affidavit doesn't deny that he hired through his corporaton, Tennessee residents to install alarm systems in the homes of Tennessee customers as alleged. Defendant Roman doesn't deny that he personally authorized telemarketing calls to be placed to Tennessee residents as alleged on behalf of his corporation. Defendant Roman doesn't deny that he paid for telemarketing calls to be placed to Tennessee residents as alleged on behalf of his corporation. Defendant Roman doesn't deny that Homeland Security is an authorized agent of Security Systems, Inc., as alleged. Although he claims to not personally conduct business in Tennessee, Defendant Roman doesn't deny that his corporation does.

47. Dismissal is improper at this stage even without direct liability for these parties as the Plaintiff can establish vicarious liability for these parties in accordance with the FCC's declaration in the Dish network case and as the defendants have conceded.

**The Plaintiff's has established the facts and elements sufficient to allege vicarious liability in his most recent amended complaint pending before the court as an attachment to the Motion for leave to amend.**

48. In the Plaintiff's most recent motion for leave to amend, the Plaintiff expands in great detail and alleges sufficient facts to establish allegations supporting vicarious liability against Russell MacDonnel and Rapid Response under the theories of actual authority, apparent authority, and ratification.

49. The Plaintiff alleges the existance of a contractual relationship between Rapid Response and Safeguard America, which counsel for the defendants has confirmed does exist, and that this contract establishes actual authority that Safeguard America is acting on behalf of Rapid Response in procuring leads and customers for alarm monitoring services.

50. Furthermore, the recording provided by the defendants in their motion is further proof of the involvement of Security Systems Inc and Defendant Roman in this case as the telephone agent confirmed that Security Systems, Inc was responsible for the calls placed to the Plaintiff's cell phone.

51. The Plaintiff has alleged sufficient facts to establish vicarious liability under the doctrine of Apparent Authority. Pursuant to the elements established by the FCC for a court to consider when evaluating an allegation of Apparent authority, the Plaintiff has properly stated a claim for vicarious liability in his motion for leave to amend and amended complaint.

16

52. *According to the FCC, there are several examples of evidence that might be relevant in a finding of apparent authority: 1. Access to detailed information regarding the nature and pricing of the seller's products and services 2. the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems 3. the authority to use the seller's trade name, trademark, and service mark, and 4. that the seller approved, wrote or reviewed the outside sales entity's telemarketing scripts and 5. if the seller knew or should have known that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to stop.* [5] The FCC recommends using a totality of the circumstances approach to a finding of apparent authority.

53. The Plaintiff has alleged sufficient facts to establish a showing of vicarious liability under the doctrine of ratification by alleging that Security Systems Inc is knowingly accepting the benefits of the illegal actions of Homeland Security by accepting the customers generated by the complained of telephone calls.

54. In summary, the Plaintiff has alleged sufficient facts to establish a claim on the grounds of vicarious liability against the defendants Security Systems Inc., and David Roman.

---

[5]see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015) citing Dish 2 FCC Rcd at 6592.

17

**David Roman and Security Systems Inc., should be held vicarious liable as any other finding would undermine the deterrent effect and purpose of the TCPA.**

55.  As noted in Jackson v Caribbean Cruise Line, 2:2014-cv-02485, document 83 (2015) "*a number of courts have considered whether a defendant my nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative.*" additionally, the court held that "*Some courts have looked to th purpose of the TCPA and found that to hold otherwise, that is to decline to recognize potential vicarious liability under the statute would undermine its deterrent effect. See Bank, No. 12-cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA liability by merely hiring a different company to make unlawful calls, the statute would lose its deterrent effect. Vicarious liability prevents this liability maneuvering*") and cited "Birchmeier v Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec 31, 2012) (*"To offer an example, suppose that A, a well heeled entity wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, th impecunious dialer, would be liable, and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA"*)

18

56. Under this rationale, doing anything other than holding Safeguard America and David Roman as vicariously liable for the actions of the distributors/telemarketers hired to place illegal telemarketing calls on behalf of the defendants., would lead to an absurd result allowing the defendants to get off scot-free, undermine the deterrent effect of the TCPA, and run counter to the overwhelming majority of courts that have reviewed similar TCPA decisions.

**In Response to the Motion to Dismiss by Adam Coursey and John Keith**

57. The Defendant's motion to Dismiss should be denied for the foregoing reasons.

**The Plaintiff need not allege the calls were directly placed to him by Defendants John Keith and Adam Coursey. to establish liability against these defendants.**

58. As stated in the Plaintiff's pending motion for leave and amended complaint, the Plaintiff isn't required to allege direct liability or that the defendants John Keith or Adam Coursey individually placed the calls. Courts in the 6th circuit have held that authorizing illegal faxes or telephone calls and paying for those illegal advertisements is sufficient to establish liability. *In this case, the Defendants authorized and paid for the advertisement to be faxed to thousands of recipients. As the senders, they are responsible for these faxes.* see Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

59. As a party in line to directly benefit and profit from the sale of alarm services, they would naturally be vicariously liable for the calls which advertise their services for which they would directly profit.

60. Defendants' Coursey and Keith in their affidavits don't deny that they hired employees to place telephone calls to Tennessee residents, including the Plaintiff, as alleged on behalf of their corporation. Defendants' Coursey and Keith don't deny in their affidavits that they sell and market alarm systems to Tennessee residents as alleged. Defendants' Coursey and Keith in their affidavits don't deny that they hired through his corporaton, telemarketers to place calls toTennessee residents to install alarm systems on behalf of their corporation as alleged. Defendants' Coursey and Keith don't deny that they personally authorized telemarketing calls to be placed to Tennessee residents as alleged on behalf of his corporation. Defendants' Coursey and Keith don't deny that they paid for telemarketing calls to be placed to Tennessee residents as alleged on behalf of his corporation. Defendants' Coursey and Keith doesn't deny that Homeland Security is an authorized agent of Security Systems, Inc., and were acting on behalf of and for the benefit of Security Systems, Inc. as alleged. Although they claim to not personally conduct business in Tennessee, Defendants' Coursey and Keith doesn't deny their corporation does business in Tennessee.

61. Dismissal is improper at this stage even without direct liability for these parties as the Plaintiff can establish vicarious liability for these parties in

20

accordance with the FCC's declaration in the Dish network case and as the defendants have conceded.

**The Plaintiff's has established the facts and elements sufficient to allege vicarious liability in his most recent amended complaint pending before the court as an attachment to the Motion for leave to amend.**

62. In the Plaintiff's most recent motion for leave to amend, the Plaintiff expands in great detail and alleges sufficient facts to establish allegations supporting vicarious liability against Adam Coursey and John Keith under the theories of actual authority, apparent authority, and ratification.

63. The Plaintiff alleges the existance of a contractual relationship between Rapid Response and Security Systems, Inc., dba Safeguard America, which counsel for the defendants has confirmed does exist, and that this contract establishes actual authority that Safeguard America is acting on behalf of Rapid Response in procuring leads and customers for alarm monitoring services. The Plaintiff also alleges Homeland Security LLC is in a contractual agreement with Security Systems, Inc., dba Safeguard America.

64. Furthermore, the recording provided by the defendants in their motion is further proof of the involvement of Security Systems Inc and Homeland Security, LLC in this case as the telephone agent confirmed that Security Systems, Inc/Homeland Security, LLC was responsible for the calls placed to the Plaintiff's cell phone.

21

65. The Plaintiff has alleged sufficient facts to establish vicarious liability under the doctrine of Apparent Authority. Pursuant to the elements established by the FCC for a court to consider when evaluating an allegation of Apparent authority, the Plaintiff has properly stated a claim for vicarious liability in his motion for leave to amend and amended complaint.

66. *According to the FCC, there are several examples of evidence that might be relevant in a finding of apparent authority: 1. Access to detailed information regarding the nature and pricing of the seller's products and services 2. the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems 3. the authority to use the seller's trade name, trademark, and service mark, and 4. that the seller approved, wrote or reviewed the outside sales entity's telemarketing scripts and 5. if the seller knew or should have known that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to stop.* [6] The FCC recommends using a totality of the circumstances approach to a finding of apparent authority.

67. The Plaintiff has alleged sufficient facts to establish a showing of vicarious liability under the doctrine of ratification by alleging that Security Systems Inc is knowingly accepting the benefits of the illegal actions of Homeland Security by accepting the customers generated by the complained of telephone calls.

---

[6]see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015) citing Dish 2 FCC Rcd at 6592.

68. In summary, the Plaintiff has alleged sufficient facts to establish a claim on the grounds of vicarious liability against the defendants John Keith and Adam Coursey.

**Adam Coursey and John Keith should be held vicarious liable as any other finding would undermine the deterrent effect and purpose of the TCPA.**

69. As noted in Jackson v Caribbean Cruise Line, 2:2014-cv-02485, document 83 (2015) "*a number of courts have considered whether a defendant my nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative.*" additionally, the court held that "*Some courts have looked to th purpose of the TCPA and found that to hold otherwise, that is to decline to recognize potential vicarious liability under the statute would undermine its deterrent effect. See Bank, No. 12-cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA liability by merely hiring a different company to make unlawful calls, the statute would lose its deterrent effect. Vicarious liability prevents this liability maneuvering"*) and cited "Birchmeier v Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec 31, 2012) *("To offer an example, suppose that A, a well heeled entity wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, th impecunious dialer, would be liable, and that A would get off scot-free. A Congressional*

enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA")

70. Under this rationale, doing anything other than holding John Keith and Adam Coursey as vicariously liable for the actions of the distributors/telemarketers hired to place illegal telemarketing calls on behalf of the defendants., would lead to an absurd result allowing the defendants to get off scot-free, undermine the deterrent effect of the TCPA, and run counter to the overwhelming majority of courts that have reviewed similar TCPA decisions.

Respectfully submitted, January 8th 2015

Craig Cunningham Plaintiff, Pro-se, 615-348-1977
5543 Edmondson Pike, ste 248
Nashville, Tn 37211

24

United States District Court
**Middle District Tennessee**

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)          v.                                    **CIVIL ACTION NO.** 3:15-cv-00846
)
)   Rapid Response Monitoring Services, Inc. et al
)          John/Jane Doe 1-10
)   Defendants.

## Plaintiff's Certificate of Service

I certify that on January 8th, 2015, the plaintiff served the Defendants with a copy of this motion via ECF first class mail to:

Stephen Barham of Chambliss, Bahner, and Stophel, PC Liberty Tower, ste 1700 605 Chestnut Street Chattanooga, TN 37450

Michael T Schmitt of Ortale, Kelley, Herbert, and Crawford, PO Box 198985, Nashville, TN 37219

Craig Cunningham, Plaintiff, Pro-see
5543 Edmondson Pike ste 248
Nashville, TN 37211
1/8/2015

25