United States District Court
Middle District Tennessee

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)           v.                              **CIVIL ACTION NO.** 3:15-cv-00846
)
)  Rapid Response Monitoring Services, Inc., Russell Macdonnell,
)  Security Systems, Inc. dba Safeguard America., David Roman, Laura Roman,
Homeland Security, LLC, Adam Coursey
)        John/Jane Doe 1-10
)    Defendants.

### Plaintiff's Second Amended Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was
   resident of Davidson County at all times relevant to the complaint, and
   currently has a mailing address of 5543 Edmondson Pike, ste 248,
   Nashville, TN 37211

2. Upon information and belief, Security Systems, Inc, dba Safeguard
   America., is an alarm dealer and Florida corporation operating from 55
   Sebethe Drive, Cromwell, CT 06416 with a registered agent David Roman
   6220 South Orange Blossom Trail, ste 196, Orlando, FL 32809.

3. David Roman and Laura Roman are listed as officers of Security Systems,
   Inc., dba Safeguard America. They can be served at 39 Harvest Woods
   Lane, Higganum, CT 06441. David and Laura Roman are liable for the
   telephone calls made by or on behalf of Safeguard America.

4. Rapid Response Monitoring Services Inc., is a New York corporation and
   alarm monitoring company that is liable for calls placed on their behalf to

1

market their alarm monitoring services and is operating from 400 W. Division Street, Syracuse, New York, 13204. The agent for service is Russell MacDonnell and the entity can be served directly at 400 West Division Street, Syracuse, New York, 13204.

5. Russell MacDonnell is the CEO for Rapid Response Monitoring Services, Inc., and can be served at 400 West Division Street, Syracuse, New York, 13204.

6. Homeland Security, LLC is a Florida Corporation operating from 5555 W. Waters Ave. Ste. 607, Tampa, FL 33634 and can be served via registered agent: Adam Coursey, 11934 Wandsworth Dr., Tampa, FL 33626.

7. John Keith is an officer and manager of Homeland Security LLC and can be served at 1409 Little Meadow Road, Guilford, CT 06437.

8. Adam Coursey is a manager and officer of Homeland Security, LLC and can be served at 11934 Wandsworth Ave., Tampa, FL 33626.

9. John/Jane Doe Defendants represent any other entities/agents that are liable for the calls to include any 3rd party lead generation companies hired by any of the defendants to place calls on their behalf.

## Jurisdiction

10. Jurisdiction of this court arises as the acts happened in this county

11. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

12. The Defendants regularly had calls placed for their benefit or on their behalf to Tennessee residents for the purpose of soliciting residents to buy their alarm monitoring services and alarm systems sold through SafeGuard America. Additionally, Tennessee residents were hired as agents to conduct installation in Tennessee of the alarm systems.

## FACTUAL ALLEGATIONS

13. In 2015, the Plaintiff recieved multiple phone calls from a company conducting a "Safety survey". The Plaintiff participated in one call to ascertain the identity of the party placing these unsolicted calls that. In conducting further research the Plaintiff identified at least 28 phone calls that were made by this overseas entity conducting a safety survey to the Plaintiff.

14. The calls contained a pre-recorded message instructing the Plaintiff to Press 1 to speak to an agent regarding a safety survey. At no time during the calls did the agents state the name of they company they were calling for or on behalf of.

15. These phone calls violated the TCPA in two ways, first by having a pre-recorded message and by placing automated calls to the Plaintiff's cell phone in violation of 47 USC 227(b). Secondly, the calls violated 47 USC 227(c)(5) as codified under 47 CFR 64.1200(d) as the calls failed to identify the party placing the calls and by spoofing the caller ID

information, which intentionally misrepresents the phone number from which they are calling and the calls failed to provide an address for the entity at which the person or entity placing the calls may be contacted. The calls also violated 47 CFR 64.1200(d) by the defendants not maintaining a do not call policy, not maintaining a do not call list, and not training their agents/employees on the use of a do not call list. All of these calls were for telemarketing purposes.

16. On June 26th 2015 the Plaintiff recieved calls from a spoofed number, 386-789-2232 to his cell phone 615-331-7262 at the following times (UTC format): 19:09:33, 19:04:34, 19:20:59, 19:21:00, 19:30:30, 19:30:31, 19:41:07, 19:41:08, for a total of 8 calls.

17. On June 27th 2015, the Plaintiff recieved an additional 12 phone calls from the same phone number as on June 26th at the following times (UTC Format) 18:16:25, 18:48:40, 19:03:34, 19:14:45, 19:39:35, 19:57:08, 19:59:46, 20:18:34, 20:29:50, 20:39:16, 20:56:32, and 21:05:26.

18. The Plaintiff recieved additional calls on June 17th, 2015 at the following times (UTC format): 23:52:09, and 23:52:10 and on June 18th, 2015 at 23:08:26 and 23:08:28, and June 19th at 23:21:23 and 23:21:24 and on June 22nd 23:20:03 and 23:20:04.

**SafeGuard America hired a Tennessee resident to perform the installation of a security System and placed additional violating phone calls to the Plaintiff.**

19. Additionally, each and every call placed by Safeguard America and Homeland Security to the Plaintiff also violated the TCPA, 15 USC 227(b) and 15 USC 227(c)(5) as codififed through 47 CFR 64.1200 et seq. The Plaintiff recieved a call on July 2nd 2015 at 11:23 CST from 203-823-9858 from Colleen with Safeguard America and previously on 6/29/2016 at 16:59 CST from 203-823-9858 to 615-331-7262. The July call was to reschedule the installation from 1-2PM to 3-4PM as the agent of Safeguard America stated that the installer was running behind from a previous installation job being conducted on behalf of Defendant Safeguard America in Tennessee.

20. The Plaintiff then rescheduled the installation to 6-7 PM, and the agent for Safeguard America stated that the Plaintiff should just call back to Safeguard America if he needed to get in touch directly with the installation tech as their dispatch would forward the Plaintiff's call on to the installation tech directly. The agent further stated that they would obtain an alarm system permit on behalf of the Plaintiff with the metro Nashville governent and would do so at their own cost.

21. The Plaintiff then met the installation tech for Safeguard America at 4120 Nolensville Pike, Nashville, TN 37211. The Plaintiff immediately recognized the installation tech as a local locksmith/security guy who performed security work for the Plaintiff previously. The locksmith also immediately recognized the Plaintiff as well and recalled the previous installation at the 4120 Nolensville location. The Plaintiff previously owned

5

a money service business for which he had electronic strike locks and a
HID keypad and magnetic lock installed and this agent of Safeguard
America was the exact same individual who previously performed the
installation work.

22. The Plaintiff and the installation tech for Safeguard America talked for 30-
45 minutes getting caught up on the past few months, and in that
conversation confirmed that the agent was working on behalf of Safeguard
America in Tennessee and the Plaintiff already knew the individual was a
Tennessee resident.

## How the Plaintiff determined the calls were being placed by an automated telephone dialing system as defined by the TCPA, 47 USC 227

23. It was apparent to the Plaintiff that the phone calls were being placed by
an automated telephone dialing system as defined by the TCPA.

24. First, there was a characteristic pause of "dead air" when the Plaintiff
answered the call and spoke to the agent that is typical of automated
telephone dialing systems.

25. Second, the Plaintiff heard a pre-recorded message upon answering the
call, which is conclusive that a pre-recorded message was used.

26. Third, the time and frequency of the calls were characteristic of an when
automated telephone dialing system. First, getting the large volume of
calls in a single day is typical of automated telephone dialing systems, so
getting 8 calls on June 26th or 12 calls on June 27th suggests the use of an

automated telephone dialing system. It is unlikely and uncommon that any human would make such a large volume of calls in a single day.

27. Additionally, many of the calls were placed literally 1 or 2 seconds apart is not humanly possible and can only be done via a computer, for example on June 19, calls were recieved at 23:21:23 and again one second later at 23:21:24 or on June 18th, calls were recieved at 23:08:26 and again at 23:08:28, two seconds later. It is beyond the realm of human capabilities to place calls to the same number and is characteristic of an automated telephone dialing system to have rapid fire calls placed in less time that it takes to manually dial the number.

28. Based on the above analysis, the Plaintiff determined that each and every one of the lead generation calls were placed to the Plaintiff's cell phone using an automated telephone dialing system telephone calls along with a pre-recorded message.

29. **Safeguard America, Rapid Response, Inc, and Home Land Security directed the lead generation calls to be placed to the Plaintiff**

30. Additionally, the calls which were from a lead generation company hired by Safeguard America or Homeland Security, the Plaintiff recieved additional calls from Security Systems Inc, DBA Safeguard America.

31. The calls from Safeguard America took place exactly one day after the lead generation call and the agent Kathy directly stated that *"Just the other day on Saterday, Craig you took quick safety survey with one of our representatives here, ah basicly we call it our quick safety survey, we*

*called you up over the phone..."* By admitting to and taking direct responsibility for the lead generation call, it is clear that Safeguard America and Homeland Security LLC were responsible for the lead generation call from 386-789-2232 on Saterday June 27th 2015.

32. At this point, it isn't clear absent discovery which entity was directly responsible for contracting with the lead generation companies, but both Homeland Security and Safeguard America are liable in any event, and the Plaintiff spoke to agents of both Homeland Security and Safeguard America as a result of the illegal lead generation calls.

33. On June 29th 2015, the Plaintiff recieved a call from Kathy who stated she was with Security Systems Inc., dba Safeguard America or Homeland Security, LLC. Kathy stated that on Saterday June 27th, the Plaintiff took a safety survey with one of their representatives at Safeguard America. She stated *"We call it our quick safety survey. We called you up over the phone and asked you a few questions about smoke detectors, fire extinguishers in the home. You remember the survey?"* This is in reference to the 11 phone calls on June 27th in which the Plaintiff took a safety survey.

34. Some companies do a "survey" as part of an otherwise illegal telemarketing campaign in an attempt to legitimize the call and dodge TCPA liability. Most recently, Caribbean Cruise Line made billions of phone calls in the manner before they were fined by the Federal Trade

Commission, and in several class action lawsuits, courts have rejected this thinly veiled attempt to skirt the requirements and liability of the TCPA.

35. Kathy stated that the Plaintiff's name was entered in the company's promotion and the Plaintiff was selected to recieve a brand new $1200 GE wireless security system at no charge.

36. The Plaintiff was told that all he had to do to qualify was to be a home owner in Nashville. Kathy stated that the system was made by General Electric and frequently referenced the brand name of General Electric during the call. Interestingly enough, in conversations with counsel for GE security, they stated that neither Homeland Security or Security Systems Inc are authorized dealers and have no authority to use their trademarks and brand name.

37. Kathy went on and talked about the various aspects of the security system, a back up battery, motion detectors, and loud interior siren, yard sign, window stickers, etc.. Kathy also stated that the Plaintiff would get a discount on his home owner's insurance after signing up.

38. Kathy stated the only thing the Plaintiff would have to pay for is the monitoring service, which is about a dollar per day and comes with a lifetime warranty.

39. Kathy then transferred the Plaintiff over to Alyssa, one of the "promotional managers", and Alyssa stated that she was calling with Safeguard America and they would install a GE home security system, and the monitoring was through a different company called "Rapid Response".

Alyssa stated the website was www.gesafeguard.com for Safeguard
America.

## Homeland Security is contracted with and is an authorized Dealer acting on behalf of Safeguard America.

40. Upon further research, the website gesafeguard.com is operated by
Homeland Security, LLC and the Plaintiff believes he may have actually
spoken with agents of Homeland Security LLC in the phone calls. It is
unclear at this point if it was Homeland Security LLC, Safeguard America,
or agents of both companies directly that the Plaintiff was speaking with.
The Plaintiff also determined that Homeland Security LLC is an authorized
dealer of Security Systems Inc., dba Safeguard America, according to
both agents of Safeguard America and Homeland Security.

41. On July 27th 2015 at 12:12 CST, the Plaintiff called Homeland Security
LLC at 813-302-7777 and the agent answered the phone giving the name
of "Safeguard America" even though the Plaintiff was actually calling
Homeland Security, LLC and when the Plaintiff asked about the
relationship between Safeguard America and Homeland Security, the
agent confirmed that Homeland Security LLC was an authorized dealer for
Safeguard America.

## Rapid Response Inc is contracted with Security systems Inc., dba Safeguard America to provide alarm monitoring services

42. Upon further research, the Plaintiff determined Rapid Response Inc. is
contracted with Security Systems Inc., dba Safeguard America to provide

alarm monitoring services for the customers of Safeguard America, for which Rapid Response would charge a monthly fee. Rapid Response inc authorized Safeguard America to act on their behalf to generate leads and obtain customers for alarm monitoring services as part of that contract and agreement.

43. Rapid Response Inc., would directly profit if the Plaintiff had signed up for security services as a result of these automated calls through the contractual relationship between Safeguard America and Rapid Response Inc.

44. To establish TCPA liability, it is not necessary that a defendant directly place the illegal calls in question. The FCC has defined a "Seller" under the TCPA, via 47 CFR 64.1200 to mean "*The person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person*" and imposes requirements on sellers to include 46 CFR 64.1200(d) which states: "*Identificaton of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted*"

45. In this case, Rapid Response is a "Seller" as phone calls were transmitted on their behalf encouraging the purchase of alarm monitoring services.

## Corporate Officer Liability under the TCPA

46. Courts have long held that corporate officers can beheld liable under the TCPA without piercing the corporate veil. In Texas v American BlastFax, Inc., the 5th Circuit COA held *"However, if the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable"*, citing US v Pollution Serv. of Oswego, Inc., 763 F.2d 133, 134-35 (2nd Cir 1985) additionally, the court held "The "well-settled" tort rule provides that "when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."

47. Finally, in the context of the TCPA, "*The court finds the above principles applicable to the TCPA-that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. **Individuals who directly (and here, knowingly and willfully vilate the TCPA should not escape liability solely because they are corporate officers. As the State persuasively argues, to hold otherwise would allow the individual defendants to simply dissolve the Blasfax, setup a new shell corporation and repeat their conduct. Congress surely did not intend to permit such a response in passing the TCPA.***"

48. Courts in the 6th Circuit have also held defendant officers liable in TCPA actions. US District Court Judge Julian Abele Cook Jr. stated "*Although*

the Sixth Circuit has not ruled on this issue, many courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute" and "The Defendants do not dispute that Beason personally participated in the payment of and authorization for the fax ads. As a result, he is personally liable for the violation of the TCPA " see **Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC**, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

49. David Roman and Laura Roman are the managers of Security Systems Inc., and are liable for the calls placed on behalf or for their benefit, which include each of these 30 calls. They are personally liable for the TCPA damages as they had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made.

50. David and Laura also failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA. In fact, they specifically crafted their dialing campaign in an attempt to circumvent TCPA liability by adding a bogus survey at the beginning of the call. This demonstrates that the calls were knowingly made in an attempt to violate the TCPA. David and Laura are directly and personally liable for the calls made on behalf of their corporation and at their direction.

51. Adam Coursey and John Keith are the managers of Homeland Security, LLC and are liable for the calls placed on behalf or for their benefit, which include each of these 30 calls. They are personally liable for the TCPA damages as they had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made.

52. Adam Coursey and John Keith also failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA. In fact, they specifically crafted their dialing campaign in an attempt to circumvent TCPA liability by adding a bogus survey at the beginning of the call. This demonstrates that the calls were knowingly made in an attempt to violate the TCPA. Adam and John are directly and personally liable for the calls made on behalf of their corporation and at their direction.

53. Russell MacDonnell is liable for the calls placed on behalf of Rapid Response Inc., or for their benefit, which include each of these 30 calls. He is personally liable for the TCPA damages as he had direct, personal participation in causing the illegal telephone calls to be made as well as he directly authorized the illegal telemarketing calls to be made.

54. Russell Macdonnell also failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA. In fact, they specifically crafted their dialing campaign in an attempt to circumvent TCPA liability by adding a bogus survey at the beginning of the call. This demonstrates that the calls were knowingly made in an attempt to violate

14

the TCPA. Russell is directly and personally liable for the calls made on behalf of their corporation and at their direction.

55. The Defendants are liable to the Plaintiff in the amount of $3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5) through violations of 47 CFR 64.1200.

56. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.

### Vicarious Liability

57. In making these calls, Security Systems Inc., dba Safeguard America and Homeland Security, LLC were essentially marketing the alarm products as well as  monitoring services offered by Rapid Response through their dealer relationship with both companies. The parties are also jointly and severally liable for the phone calls as well.

58. Similarly, the calls were placed with apparent authority, actual authority, and the ratification of  Rapid Response, Homeland Security, and Security Systems Inc., dba Safeguard America, and the respective executives/officers of the corporation. These companies knew of the illegal conduct by Security Systems Inc., dba Safeguard America and Homeland Security, LLC and their improper telemarketing, and still refused to

exercise control or authority over Defendant Safeguard or Homeland

Security, LLC to reduce or eliminate the improper sales methods.

## Safeguard, Homeland Security, and Rapid Response are vicariously liable under the principal of actual authority

59. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act.

60. In this case, the authorized dealer Homeland Security, LLC was acting on behalf of Safeguard America, as they reasonably would have done marketing the alarm products and services of Rapid Response, which both parties agreed the distributor Homeland Security would do.

61. A finding of actual authority requires a manifestation by the principal that the agent shall act for them.

62. In this case, that manifestation is found in the contracts between the parties Rapid Response Inc., and Safeguard America and Safeguard America and Homeland Security, LLC.

63. Safeguard America authorized Homeland Security, LLC to act on behalf of them to procure customers for alarm system sales. Rapid Response in turn authorized Safeguard America to bind customers of Safeguard America to Homeland Security in exchange for monthly monitoring services and payments for those monitoring services.

64. Rapid Response sought and wanted Safeguard America to procure customers for their services and paid Safeguard America to do so. In turn, Safeguard America sought customers to buy alarm systems and paid Homeland Security to obtain these customers. Homeland Security and Safeguard America contracted with a telemarketing company to place calls on behalf of Defendant Homeland Security for the purpose of generating leads for the benefit of all parties: Homeland Security, Rapid Response, and Safeguard America. Homeland Security on behalf of Safeguard America and Rapid Response used illegal telemarketing services to obtain customers and leads which were then sent to Safeguard America and Rapid Response to be solicited.

65. Lastly, there is an understanding that the principal is in control of the undertaking in each of these agreements. In this case, Homeland Security was the principal and was in control of the telemarketing services obtained controlling and approving the scripts used, the use of the "safety survey" in an attempt to sidestep liability under the TCPA, and directed the phone numbers to call. Rapid Response also was the principal and gave authority for Safeguard America to market the monitoring services of Rapid Response. Safeguard America is the principal and gave authority for Homeland Security to obtain prospects on their behalf.

66. In summary, Safeguard America's authorized dealer Homeland Security clearly had actual authority to market and advertise on behalf, and Homeland Security's lead generation company had actual authority to plae

calls on behalf of Homeland Security and Safeguard America and did so after both parties agreed by written contract that the distributors would engage in tele-marketing and advertising.

**Rapid Response, Homeland Security, and Safeguard America are vicariously liable under the concept of Apparent authority**

67. According to the FCC, there are several examples of evidence that might be relevant in a finding of apparent authority: 1. Access to detailed information regarding the nature and pricing of the seller's products and services 2. the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems 3. the authority to use the seller's trade name, trademark, and service mark, and 4. that the seller approved, wrote or reviewed the outside sales entity's telemarketing scripts and 5. if the seller knew or should have known that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to stop. [1] The FCC recommends using a totality of the circumstances approach to a finding of apparent authority.

68. In this case all of these elements identified by the FCC in finding apparent authority liability are present. Safeguard America dealers had access to detailed information regarding the pricing of the alarm products. This pricing information is not publicly available.

---

[1] see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015) citing Dish 2 FCC Rcd at 6592.

69. Safeguard America dealer Homeland Security had the ability to enter customer information into systems online, and Safeguard America was able to enter customer information into Rapid Response's computer systems as well.

70. Safeguard America dealer Homeland security had authority to use the Safeguard America trade names/trademarks in marketing safeguard America products and regularly did so even answering the phone and misrepresenting that the Plaintiff was speaking to an agent of Safeguard America when he was really speaking to Homeland Security employees. Similarly, Rapid Response allowed Homeland Security and Safeguard America to use their trademarks in marketing and selling the alarm products/services.

71. Safeguard American, Homeland security, and Rapid Response as demonstrated in the section above reviewed websites, pre-recorded message content, approved of telemarketing scripts and approved of marketing tactics used by the distributors in this case.

72. Lastly, Safeguard America, Rapid Response, and Homeland Security knew or should have known that their agents were violating the TCPA by placing illegal telemarketing calls and all of the defendants refused to discipline, control, or terminate any distributors for their conduct.

73. Two elements of a recent TCPA decision on vicarious liability also lend support as well. In making no finding of apparent authority, it was significant that the court found that a Defendant *"UTCFSA did not employ*

*its dealers or distributors or dealers in any way and it did not place them in*

*charge of marketing for UTCFSA. UTCFSA did engage in marketing-*

*directly to distributors and dealers. Once the distributors and dealers*

*purchased UTCFSA's products, those distributors and dealers were*

*responsible themselves for packaging and promoting their goods for sale*

*for their own profit.[2]*" By contrast, in this case, Safeguard America and

Homeland Security DO engage in marketing directly to consumers,

Safeguard America places their dealer, Homeland Security in the role of

marketing and advertising on behalf of Safeguard America. Finally, Rapid

Response and Safeguard America and Homeland Security do direcly

make a profit on the sale of each device sold by Safeguard America

distributors.

74. In conclusion, Defendants Safeguard America, Homeland Security, and

Rapid Response Monitoring are vicariously liable under the concept of

apparent authority for the calls placed by the individual dealers for the

phone calls in question.

## Safeguard America, Rapid response, and homeland security are vicariously liable under the concept of Ratification

75. Defendants Safeguard America, Rapid Response, and Homeland Security

ratified the conduct of their distributor agents by celebrating their conduct,

celebrating their sales accomplishments, sponsoring sales contests for

distributors, and knowingly accepting the benefits in the form of millions of

dollars in sales from these distributors marketing in an illegal fashion.

---

[2]see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015)

**Safeguard America, Rapid Response, and Homeland Security should be vicariously liable as any other finding would undermine the deterrent effect and purpose of the TCPA**

76. As the FCC noted in the Dish network petition, the vicarious liability theory is only one way that defendants may be held liable for 3rd parties they hire to violate the law. As noted in Jackson v Caribbean Cruise Line, 2:2014-cv-02485, document 83 (2015) "*a number of courts have considered whether a defendant my nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative.*" additionally, the court held that "*Some courts have looked to th purpose of the TCPA and found that to hold otherwise, that is to decline to recognize potential vicarious liability under the statute would undermine its deterrent effect. See Bank, No. 12-cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA liability by merely hiring a different company to make unlawful calls, the statute would lose its deterrent effect. Vicarious liability prevents this liability maneuvering")* and cited "*Birchmeier v Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at \*1 (N.D. Ill. Dec 31, 2012) ("To offer an example, suppose that A, a well heeled entity wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, th impecunious dialer, would be liable, and that A would get*

21

*off scot-free. A Congressional enactment that permitted this would be*
*absurd indeed. Fortunately that is not the law under the TCPA")*

77. Under this rationale, doing anything other than holding Safeguard
America, Homeland Security, and Rapid Response as vicariously liable for
the actions of the distributors hired to place illegal telemarketing calls on
behalf of the defendants., would lead to an absurd result allowing the
defendants to get off scot-free, undermine the deterrent effect of the
TCPA, and run counter to the overwhelming majority of courts that have
reviewed similar TCPA decisions.

## Actual Damages

78. The Plaintiff alleges actual damages have been incurred in this case. The
repeated and unwelcome phone calls constitue a common law invasion of
privacy claim against the defendants as the Plaintiff has a right to be left
alone and by making repeated unsolicited calls to the Plaintiff, particularly
after being sued, infringes on that right to be left alone.

79. The conduct of the defendants has resulted in the intentional infliction of
emotional distress to include, trouble concentrating, frustruation,
inconvenience, stress, and annoyance.

80. The Plaintiff also alleges that the fact that he must sue and engage in
these legal proceedings to recover damages for the previous phone calls
to constitute additional damages to include frustruation, inconvenience,
stress, and annoyance.

## CAUSES OF ACTION:

## COUNT I

## Violations of the Telephone Consumer Protection Act (TCPA)

81. Plaintiff Cunningham incorporates by reference all of the above
   paragraphs of this complaint as though fully stated herein.

82. The foregoing actions by the Defendants constitute multiple breaches of
   the TCPA by using an autoated telephone dialing system to place calls to
   the Plaintiff's cell phone in violation of 47 USC 227(b).This entitles the
   Plaintiff to recover $1500 per call.

## CAUSES OF ACTION:

## COUNT II

## Violations of the Telephone Consumer Protection Act (TCPA)

83. Plaintiff Cunningham incorporates by reference all of the above
   paragraphs of this complaint as though fully stated herein.

84. The foregoing actions by the Defendants constitute multiple breaches of
   the TCPA by 47 USC 227(c)(5) by way of 47 CFR 64.1200(d) and failed to
   comply with the requirements to maintain and train employees on the use
   of a do-not-call list.

## Count III

## Civil Conspiracy

85. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

86. The foregoing actions by the Defendants constitutes a civil conspiracy between the entities and the corporate officers in as such as they agreed to break the law, specifically the TCPA in an attempt to solicit and sell alarm devices and monitoring services.

## PRAYER FOR DAMAGES AND RELIEFS

A.  WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B.  Statutory damages of $3000 for each phone call.

C.  Actual Damages of $5,000 per phone call.

D.  Pre-judgment interest from the date of the phone calls

E.  Attorney's fees for bringing this action; and

F.  Costs of bringing this action; and

G.  For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted, December 28th 2015

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

5543 Edmondson Pike, ste 248, Nashville, TN 37211