IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | |
| | ) | No. 3:15-cv-0846 |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| RAPID RESPONSE MONITORING | ) | |
| SERVICES, INC., et al. | ) | |

---

**MEMORANDUM SUPPORTING MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND MOTION TO STRIKE**

---

Defendants Rapid Response Monitoring Services, Inc. ("Rapid Response") and Russell
MacDonnell (collectively "Rapid Response Defendants") submit this Memorandum in support of
their Motion to Dismiss:

## I.      SUMMARY OF ARGUMENT

Mr. Cunningham filed this action because he received multiple phone calls, which he
claims violated the Telephone Consumer Protection Act ("TCPA"). Mr. Cunningham's status as
a professional TCPA plaintiff robs him of standing to bring suit under the TCPA because he
cannot establish injury in fact or that he is the type of plaintiff within the zone of interest
protected under the TCPA. Even if Mr. Cunningham has standing to bring suit, his claims
brought pursuant to 42 U.S.C. § 227(b) fail because Rapid Response is not a "seller," as defined
the TCPA regulations and the Second Amended Complaint fails to assert sufficient facts to
establish vicarious liability under either agency principles or ratification. Mr. Cunningham's
claims based upon alleged violations of 47 C.F.R. § 64.1200(d) are not actionable because there
is no private right of action for violating this subsection of the TCPA regulations. Finally, Mr.

Cunningham's conspiracy claims and attempt to hold Mr. MacDonnell liable personally are based upon conclusory allegations without factual support.

## II.    FACTS

Rapid Response is an alarm monitoring company that operates and maintains a central station for the receipt of voice communications and electronic signals from different types of alarm systems. *See* Agreement for Central Station Services, dated June 29, 2006 (attached to the Affidavit of Russell MacDonnell as Exhibit A)(DE: 60-1). Alarm system dealers, such as Safeguard America, may (but are not required to) connect their subscribers' security alarms to Rapid Responses' central station, which would allow Rapid Response to monitor those alarms. *Id.* at ¶ 1.  Security Systems, Inc. d/b/a Safeguard America ("Safeguard America") sales, leases, installs and services security alarm systems. *Id* (second whereas recital). Safeguard America pays Rapid Response a fixed fee to purchase the right to connect its subscribers to Rapid Response's central station. *See* 2013 Addendum, ¶ 1 attached to the Affidavit of Russell MacDonnell as Exhibit B)(DE: 60-2).

Mr. Cunningham alleges that an unidentified overseas entity conducting "safety surveys" called him 28 times attempting to get him to take a safety survey, including 11 phone calls made on June 27, 2015. Second Amended Complaint, ¶¶ 13, 16-18.  Mr. Cunningham ultimately answered one of these calls on June 27, 2015 and took a "safety survey." *Id.* at ¶ 33; *see also* Safety Survey Recording, attached to Motion as Exhibit 1 (to be manually filed).  During this safety survey, Mr. Cunningham is informed that for taking the safety survey, he will be placed in a drawing for a new GE alarm system and if he is selected, he would be "informed at a future time." Safety Survey Recording, Ex. 1. In response, Mr. Cunningham states: "I would be interested in getting one of those." *Id.*

2

On June 29, 2015, Mr. Cunningham received a call from "Kathy" with Safeguard America informing him that as a result of taking the "safety survey," he had been chosen to receive a GE wireless security system at no charge. Second Amended Complaint, ¶¶ 33, 35; June 29th Audio Recording (previously filed as DE: 24). According to Kathy, Mr. Cunningham would only be required to pay for the monitoring of the system. Second Amended Complaint, ¶ 38; see also DE: 24. Kathy then transferred Mr. Cunningham to "Alyssa" who claimed to be a promotional manager with Safeguard America. Second Amended Complaint, ¶ 39; see also DE: 24. According to Alyssa, Safeguard America would install the GE security system, "and the monitoring was through a different company called 'Rapid Response.'" *Id.* Mr. Cunningham does not allege that the Rapid Response Defendants initiated any of the alleged phone calls or spoke with Mr. Cunningham at any time. Second Amended Complaint.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, 917 F. Supp. 2d 740, 744 (M.D. Tenn. 2008) (Fed. R. Civ. P. 8(a)(2) "does require a 'showing' that the plaintiff is entitled to relief and [] this substantive threshold is not achieved by 'blanket assertion[s].'"). This "plausibility standard" "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678.

3

Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.; see Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012). Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). In considering a motion to dismiss, the Court may consider exhibits attached to defendant's motion that are referenced in the Complaint and are central to the plaintiff's claims. Rondigo, LLC v. Township of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011).

To survive a motion to dismiss for lack of standing, a complaint must plead the elements of standing in "the manner and degree of evidence required" and provide "factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, the plaintiff must allege an injury-in-fact from the defendant's conduct under Article III of the U.S. Constitution that is not "highly conjectural." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001). In considering a motion to dismiss for lack of standing, federal courts can consider evidence without converting the motion into a summary judgment motion under Rule 56. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986).

## IV.   ARGUMENT

**1.   This Court may review the audio recordings of the alleged offensive calls made by Mr. Cunningham and the Agreement between Rapid Response and Safeguard America as both are referenced in the Second Amended Complaint and are central to Mr. Cunningham's claims.**

The Second Amended Complaint refers to phone calls, which Mr. Cunningham recorded, and to agreements between Rapid Response and Safeguard America. The content of the calls and

4

agreements are central to Mr. Cunningham's claims against the Rapid Response Defendants and therefore the Court's review of these matters does not convert this Motion to Dismiss into a motion for summary judgment. This conclusion is supported by the Sixth Circuit opinion in *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999), which stated:

> Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. See 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed.1998). This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim...." *Id.* In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.; see, e.g., Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997) (considering pension plan documents that defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

*Greenberg*, 177 F.3d at 514. Based on this precedent, the Court's review of the audio records and agreements attached to the Motion to Dismiss (or referenced from previous filings), does not turn this Motion to Dismiss into a motion for summary judgment.

**2.      Mr. Cunningham lacks standing to bring action under the TCPA because he did not suffer an injury in fact and does not fall within the zone of interest protected by the TCPA.**

There are three types of standing a plaintiff must satisfy to be able to sue under the TCPA: (1) constitutional standing; (2) prudential standing; and (3) statutory standing. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009)(discussing constitutional and prudential standing); *see also Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011)(discussing statutory standing and how it differs from constitutional and prudential standing). To establish constitutional standing, a plaintiff must show: (1) he has suffered an injury in fact; (2) the injury

is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Wuliger*, 567 F.3d at 793 (citation omitted).

In addition to constitutional standing, a plaintiff must establish he has prudential standing. *Id.* Our Circuit and even our Supreme Court has previously held that in order to establish prudential standing, a plaintiff must establish *inter alia* that his claims fall within the "zone of interests" regulated by the statute in question. *Id.* (citation omitted). More recently, the Supreme Court changed the terms of discussion for prudential standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014) It explained that "prudential standing is a misnomer as applied to the zone-of-interests analysis," and recast the test as a matter of statutory interpretation "which asks whether this particular class of persons ha[s] a right to sue under this substantive statute." *Id. Lexmark* directs courts to "determine the meaning of the congressionally enacted provision creating a cause of action." *Id.* at 1388. Because Rapid Response Defendants challenge the assertion that Mr. Cunningham falls within the zone of interests regulated by the TCPA, this argument will be set forth under the doctrine of statutory standing.

Both constitutional and prudential standing address the court's subject matter jurisdiction to hear a case. *Roberts*, 655 F.3d at 580. Conversely, where a plaintiff lacks statutory standing, his claim is appropriately challenged as failing to state a claim under Rule 12(b)(6). *Roberts*, 655 F.3d at 581-82. A key element of statutory standing is whether the plaintiff came within the "zone of interests" for which the cause of action was available. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998); *Lexmark*, 134 S.Ct. at 1387.

**a. Mr. Cunningham lacks constitutional standing because he has not suffered an "injury in fact."**

Mr. Cunningham is a professional TCPA plaintiff. A review of this Court's CM/ECF system shows that Mr. Cunningham has filed 50 lawsuits seeking recovery for alleged violations of the TCPA and similar statutes. [Click here for link](); *see also Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *2-3 (M.D. Tenn. Nov. 19, 2014) *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) (noting Mr. Cunningham's extensive foray into TCPA litigation). At least one court has found that a professional TCPA litigant failed to establish constitutional standing. *See Stoops v. Wells Fargo Bank, N.A.*, No. CV 3:15-83, 2016 WL 3566266 (W.D. Pa. June 24, 2016). In *Stoops*, the plaintiff admitted she filed TCPA lawsuits as a business. *Stoops*, 2016 WL 3566266, at *10. Specifically, the *Stoops* Court, after analyzing the interests protected under 47 U.S.C. § 227(b), found that the plaintiff's privacy interests were not violated when she received allegedly unwanted calls because the plaintiff admitted that her only purpose in using her cell phones is to file TCPA lawsuits, *i.e.*, the calls are not "a nuisance and an invasion of privacy." *Id.* at *11. "Thus, Plaintiff was not required to 'tend to unwanted calls,' and the calls did not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers." *Id.* (citations omitted). Therefore, the *Stoops* plaintiff did not suffer an injury in fact. *Id.*

It is important to note that *Stoops* dealt with a motion for summary judgment. *Id.* But, because the Rapid Response Defendants are challenging the Court's subject matter jurisdiction pursuant to Rule 12(b)(1), the Rapid Response Defendants may attack Mr. Cunningham's jurisdiction both by a facial attack (based solely on the pleadings) or by a factual attack (using evidence outside the record). *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). In this case, the Rapid Response Defendants rely upon audio recordings made by Mr. Cunningham

of the alleged offensive phone calls. As is discussed in Section 1 *supra*, these recordings can be addressed without converting this Motion to Dismiss into a motion for summary judgment because they are referenced in the Second Amended Complaint and are central to Mr. Cunningham's arguments. Conversely, the Rapid Response Defendants asserts that this Court may review the records in determining the Rule 12(b)(1) challenge to jurisdiction.

In order to establish constitutional standing, Mr. Cunningham is required to establish concrete harm separate from statutory damages. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016), as revised (May 24, 2016). In an attempt to meet this burden, Mr. Cunningham alleges that the alleged improper calls "infringe[d] on [his] right to be left alone," caused him to have "trouble concentrating, frustration, inconvenience, stress, and annoyance," and that he incurred costs for having to sue. (DE: 57, ¶¶ 78-80). Apparently, TCPA professional plaintiffs allow calls from unknown numbers to go unanswered multiple times before finally answering to increase the statutory damages available on a per call basis. Mr. Cunningham faithfully followed this format in this case. Mr. Cunningham allowed roughly 28 calls to go unanswered before June 27, 2015 when he answered what turned out to be a "safety survey." Second Amended Complaint at ¶ 33; *see also* Safety Survey Recording. Near the end of this recording, Mr. Cunningham is informed that for taking the safety survey, he will be placed in a drawing for a new GE alarm system and if he is selected, he would be "informed at a future time." Safety Survey Recording. In response, Mr. Cunningham states: "I would be interested in getting one of those." *Id.* Mr. Cunningham, being a seasoned plaintiff, understood that the safety survey, without more, likely did not violate the TCPA. Mr. Cunningham appears to be encouraging a follow-up call regarding the GE alarm system.

8

Not surprisingly, on June 29, 2015, Mr. Cunningham received a call from "Kathy" with Safeguard America informing him that he had been entered into a promotion as a result of taking the "safety survey" and that he had been chosen to receive a GE wireless security system at no charge. Second Amended Complaint, ¶¶ 33, 35; June 29th Audio Recording. According to Kathy, Mr. Cunningham would only be required to pay for the monitoring of the system. *Id.* at ¶ 38; June 29th Audio Recording. Kathy then transferred Mr. Cunningham to "Alyssa" who claimed to be a promotional manager with Safeguard America. *Id.* at ¶ 39; June 29th Audio Recording. Rapid Response is in this lawsuit because Mr. Cunningham elicited the name of the monitoring company from "Alyssa" with Safeguard, apparently in an attempt to bring more parties into the lawsuit. June 29th Audio Recording. Specifically, at the 00:14:04 mark in the June 29th Audio Recording, Mr. Cunningham asks Alyssa, "I was just wondering, for the monitoring service, who is that through?  Is it ADT, or…?" *Id.*  Alyssa responds by saying, "Oh no, no, no.  We are a different company than ADT.  Our monitoring station is Rapid Response." *Id.* She follows by saying "We are Safeguard America, we do install a GE security system in your home. And the monitoring station is out of Rapid Response and they have an A+ rating with the BBB." *Id.*

Just like the plaintiff in *Stoops*, Mr. Cunningham is a professional TCPA plaintiff.  His assertions that the calls violated his right to be left alone and caused him stress and annoyance are farcical. As evidenced by the 50 lawsuits he has filed in this district alone since 2012 and the baiting that is evident in the audio files, Mr. Cunningham files TCPA claims as a business for profit.  As set forth in *Stoops*, Mr. Cunningham actions have failed to establish an injury in fact separate from the statutory damages and his Second Amended Complaint should therefore be dismissed.

9

### b. Mr. Cunningham is not within the zone of interests sought to be protected by the TCPA and therefore lacks statutory standing.

Again, the *Stoops* case is instructive. Although *Stoops* zone-of-interest analysis was conducted under the doctrine of prudential standing, its analysis is equally applicable to the issue of statutory standing. *Stoops*, 2016 WL 3566266, at \*15; *Lexmark*, 134 S.Ct. at 1387. In discussing the zone-of-interest test, the *Stoops* court noted the following:

> In applying the zone of interest test, the Court has focused its inquiry on the Congressional intent of the statute and whether the complainant's interests were 'among the sorts of interests those statutes were specifically designed to protect. A court therefore must determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.

> In discussing constitutional standing above, the Court examined in depth Congress's intention to protect consumers from the proliferation of intrusive, nuisance telemarketing calls to their homes by enacting the TCPA. In addition to its above analysis, the Court notes that the Third Circuit Court of Appeals has addressed the zone of interests protected by the TCPA. Specifically, the Third Circuit Court of Appeals explained that in passing the Act, Congress was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance.

> As discussed above, Plaintiff has not suffered an injury-in-fact because her privacy and economic interests were not violated when she received calls from Defendant. Similarly, Plaintiff's interests are not within the zone of interests intended to be protected by the TCPA. Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not among the sorts of interests the TCPA was specifically designed to protect.

*Stoops*, 2016 WL 3566266, at \*14–15 (citations and quotations omitted).

As explained in detail in Subsection a. *supra*, Mr. Cunningham's practice of filing TCPA actions as a business places him outside of the zone of interest sought to be protected by the TCPA. He therefore lacks statutory standing and therefore fails to state a claim upon which relief may be granted.

10

3. **Count I of Mr. Cunningham's Second Amended Complaint should be dismissed because Rapid Response is not a "seller" under the TCPA, there is no direct liability under 47 U.S.C. § 227(b) for a person or entity that does not initiate the alleged offensive phone call, and the Second Amended Complaint fails to establish vicarious liability under the theories of actual authority, apparent authority or ratification.**

    *a.    There is no direct liability under § 227(b).*

Mr. Cunningham's § 227(b) claim cannot be based on direct liability or "on behalf of liability" because the Rapid Response Defendants did not "initiate" the alleged improper phone calls. *Kondaur Capital*, 2014 WL 8335868, at *5 (Noting "vicarious liability, not direct liability, provides the basis for liability under Section 227(b) against an entity that does not actually initiate or place a telephone call or text. Additionally, the plaintiff's reliance on a theory of 'on behalf of' liability is misplaced. The 'on behalf of' language to which the plaintiff refers comes from Section 227(c)8 of the TCPA, a provision that is not the basis for his claim."). Therefore, Mr. Cunningham cannot establish direct or "on behalf of" liability under § 227(b).

    *b.    Rapid Response is not a "seller" under the TCPA because Safeguard America purchased the right to connect its subscribers to the central station and Safeguard America resells this service to its subscribers.*

The FCC has explained that the policy reason for imposing vicarious liability on a seller because "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC, et al.*, 28 F.C.C. Red 6574, 6588 (2013). A seller is defined as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9). A telemarketer is defined as "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11). As set forth above, it is not alleged that the Rapid Response Defendants were telemarketers or that they

initiated the calls at issue.  Therefore, the Rapid Response Defendants may only be held vicariously liable if they are sellers.

A 2013 FCC declaratory ruling explains that in certain circumstances, an entity could be considered a "manufacturer" rather than a seller.  By way of example, the FCC discussed a retail store selling goods it had purchased from a manufacturer: "to the extent that such a store is selling on its own account-*i.e.*, it has purchased goods from a manufacturer and is re-selling them-the manufacturer would not be a seller at all." *Dish Network*, 28 F.C.C. Red at 6592. Obviously, Rapid Response is not a manufacturer of tangible products that are resold in a retail store.  But, the analogy is still instructive.  Safeguard America pays a fixed fee, or purchased the right, to connect its subscribers to Rapid Response's central station. (2013 Addendum, ¶ 1). Presumably, Safeguard America then sells this service, along with an alarm system, to its subscribers.

While this situation appears to be one of first impression, *i.e.*, whether an alarm monitoring company that sells its services to a dealer who then in turn sells monitoring as part of a package to its subscribers is a seller under the TCPA, the FCC's 2013 declaratory ruling provides guidance that supports the theory that it is not a seller.  The Rapid Response Defendants ask this Court to find that it is not a seller under the TCPA and therefore cannot be subject to vicarious liability.

> **c.      Even if Rapid Response is a "seller," the Agreement does not grant Safeguard America actual authority to initiate a telemarketing campaign on Rapid Response's behalf, to market Rapid Response's services, or to hire another dealer to undertake these actions.**

*The Restatement (Third) of Agency* explains that "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the

12

principal wishes the agent so to act." *Id.* at § 2.01. Based upon the Agreement, it would not be reasonable for Safeguard America to believe that it had authority to initiate a telemarketing campaign to generate leads or market Rapid Response's services on behalf of Rapid Response, or to engage other dealers to do so. In support of his assertion that Safeguard America and Homeland Security had actual authority to contract with a telemarketing company to place calls and generate leads on behalf of Rapid Response, Mr. Cunningham's Second Amended Complaint sets forth allegations which can be found in paragraphs 42, 60-65.

Initially, these allegations are conclusory and are not entitled to a presumption of correctness. In *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014), the Northern District Court for Illinois found the following allegations in a TCPA complaint to be conclusory: (1) Plaintiffs' allegation that Defendants' agents were authorized to hire third parties to perform telemarketing; and (2) Plaintiffs' allegation that Defendants "cloaked their agents in apparent authority ... to hire third parties such as Variable to perform telemarketing[.]" *Id.* Each of the six paragraphs set out above share similar conclusory allegations and are not entitled to a presumption of correctness.

Additionally, although Mr. Cunningham offers the Agreement as the basis for the above allegations, the Agreement cuts against these allegations. Initially, the only discussion of an agency relationship is found in the 2013 Addendum in which Safeguard America represents that it is the designated agent of its subscribers. (2013 Addendum, ¶ 12). Further, the Agreement contains the entire agreement between Rapid Response and Safeguard America and neither party has authority "to make or claim any representation, term, promise, condition, statement, warranty, or inducement which is not expressed [therein]." (Agreement, ¶ 20). Despite this language, Mr. Cunningham attempts to add language to the Agreement concerning alleged

13

authority granting Safeguard America to engage in certain practices, which are not expressed in the Agreement.

For instance, the Agreement does not grant Safeguard America authority to generate leads and obtain customers for Rapid Response. Not only is this authority not expressed in the Agreement, this allegation misinterprets the business relationship between Safeguard America and Rapid Response. Safeguard America pays Rapid Response *a monthly fixed fee* to connect the security alarms of Safeguard America's subscribers to Rapid Response's central station to permit the alarm systems to communicate with the central station. (Agreement, ¶ 1; 2013 Addendum, ¶ 1). Because the fee is fixed, the idea that Safeguard America is generating leads and customers for Rapid Response's benefit misses the point. Rapid Response is not charging the subscribers individually and does not profit with each new subscriber. Safeguard America may generate leads to sell its alarm systems, but Rapid Response's clients are the authorized dealers, in this case Safeguard America. The Agreement is evidence that Rapid Response's engages in a business to business sales model, targeted to reach its distributors and dealers.

Furthermore, the Agreement does not state that Safeguard America can engage other dealers, like Homeland Security, to generate leads. The Agreement does not grant Safeguard America authority to market Rapid Response's services. The Agreement does not grant Safeguard America authority to engage in any telemarketing services. The Agreement is completely silent as to how Safeguard America chooses to obtain subscribers because that is not Rapid Response's concern.

In order to support Mr. Cunningham's allegations, this Court would need to add additional representations or terms to the Agreement, which is prohibited by the plain language

14

of the Agreement. (Agreement, ¶ 20). Therefore, the Second Amended Complaint fails to establish vicarious liability on the theory of actual authority.

> ### d. The Second Amended Complaint does not allege facts suggesting the Rapid Response Defendants caused Mr. Cunningham to believe that Safeguard America had authority to bind the Rapid Response Defendants.

In *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590 (6th Cir. 1998), the Sixth Circuit made clear that "apparent authority arises in those situations where the principal causes persons with whom the agent deals reasonably to believe that the agent has authority. *Id.* 150 F.3d at 593 (citing *See Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982 (3d Cir.1995)). The *Anderson* Court continued by stating: "It is well-settled that apparent authority (1) results from a manifestation by a person that another is his agent, regardless of whether an actual agency relationship has been formed and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. *Id.* (citing *Restatement (Second) of Agency* §§ 8, 27 & cmts. Thereto). "Stated differently, under the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.'" *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373–74 (6th Cir. 2015)(citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir.1998)). Thus, "[t]he apparent power of an agent is to be determined by *the act of the principal and not by the acts of the agent ... [.]*"*Keating*, 615 F. App'x at 373–74 (citing *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 663 (6th Cir.2005)(emphasis in original).

Absent from the Second Amended Complaint are any factual allegations that he had personal contact with, or even an indirect route of communication from, Rapid Response such that it would be reasonable for him to believe that Rapid Response cloaked Safeguard America

15

with authority to call Mr. Cunningham to market Rapid Response's alarm monitoring services. *See Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at *9 (C.D. Cal. May 18, 2015)(citing the Restatement (Third) of Agency § 3.03, which states that the manifestation by the principal need not be directly to the third party, and that "an indirect route of communication between a principal and a third party may suffice, especially when it is consistent with practice in the relevant industry."). The Second Amended Complaint makes conclusory allegations patterned after examples provided by the FCC for when apparent authority may be established. Without more, the Second Amended Complaint fails to establish vicarious liability based upon apparent authority.

As noted by the *Makaron* Court "[t]he FCC also provided examples of evidence that might be relevant in finding apparent authority: (1) access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information, (2) the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, (3) the authority to use the seller's trade name, trademark and service mark, (4) that the seller approved, wrote or reviewed the outside entity's telemarketing scripts, and (5) if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. *Makaron*, 2015 WL 3526253, at *9 (citing *Dish Network*, 28 F.C.C. Rcd. at 6592). The FCC's "guidance" on this subject, however, is not binding on the Court and "has force only to the extent the [FCC] can persuade [the Court] to the same conclusion." *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014)(citing *Dish Network L.L.C. v. FCC*, 552 Fed.Appx. at 1–2).

16

Not surprisingly, Mr. Cunningham's allegations offered in support of finding apparent authority are almost a verbatim recitation of the FCC's examples. (*See* DE: 57, ¶¶ 67-74). As our Supreme Court instructs, a complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation omitted). "Threadbare recitals of the elements of a cause of action, supporting by mere conclusory statements, do not suffice." *Id.* As set forth below, Mr. Cunningham's recitation of the FCC's examples of when apparent authority may be found is insufficient to meet the requisite plausibility standard.

The first allegation in the Second Amended Complaint aimed at establishing apparent authority suggests that "Safeguard America dealers had access to detailed information regarding the pricing of alarm products." (DE: 57, ¶ 68). This allegation does not implicate Rapid Response, unless it suggests that Safeguard America informed its dealers how much it paid Rapid Response on a monthly fixed basis to have the right to connect its subscribers to Rapid Response's central station. But, who Safeguard America chooses to inform of how much it is paying Rapid Response does not support a finding of apparent authority. Safeguard America was not finding customers for Rapid Response, Rapid Response's "customers" are dealers.

Second, Mr. Cunningham alleges that Safeguard America could enter customer information into Rapid Response's computer system. (DE: 57, ¶ 69). While true, this is misleading. The FCC's examples for when apparent authority may be found addresses entering "consumer information into the seller's sales or customer systems." *See Dish Network*, 28 F.C.C. Rcd. at 6592. The Agreement does not suggest that Safeguard America had access to Rapid Responses "sales or customer systems"; rather, it could connect its subscriber's alarm systems to Rapid Response's central station. (Agreement, ¶ 1).

Third, Mr. Cunningham suggests that "Rapid Response allowed Homeland Security and Safeguard America to use their [sic] trademarks in marketing and selling the alarm products/services." Second Amended Complaint, ¶ 70. Once again, this allegation misstates what is set forth in the Agreement. Specifically, the Agreement states that "any and all use by [Safeguard America] of [Rapid Response's] name, trademarks, service marks, etc. is at the sole and absolute discretion of [Rapid Response], which solely owns and controls the use of all such names, marks, etc. and shall be by written license only." (Agreement, ¶ 11).

Fourth, Mr. Cunningham suggests that "Rapid Response as demonstrated in the section above [dealing with right to use trademarks] reviewed websites, pre-recorded message content, approved of telemarketing scripts and approved of marketing tactics used by distributors in this case." Second Amended Complaint, ¶ 71. It is unclear how the recitation of one of the FCC's examples, in this case the use of trademarks, leads to the conclusion that Rapid Response reviewed websites, message content and approved of telemarketing scripts and approved marketing tactics. In fact, the language in the Agreement, once again cuts against this bald assertion. Nowhere in the Agreement does it state that Rapid Response undertakes any of these actions. This conclusory and unfounded allegation should be given no weight.

Fifth, Mr. Cunningham states that Rapid Response "knew or should have known that their agents were violating the TCPA by placing illegal telemarketing calls and… refused to discipline, control, or terminate any distributors for their conduct." Second Amended Complaint, ¶ 72. This is a conclusory allegation that simply restates an example for finding apparent authority set out by the FCC. There are no facts set forth in the Second Amended Complaint that support the conclusion that Rapid Response knew that Homeland Security or Safeguard America were allegedly violating the TCPA. This provides no support for a finding of apparent authority.

18

The only two allegations that are even tangentially relevant are that Safeguard America can connect its subscribers to Rapid Response's central station and Rapid Response can provide written license for limited use of its trademarks. But, allowing Safeguard America to connect its subscribers to the central station is different than granting it access to sales or customer systems. Once again, there is no evidence that Rapid Response conducts sales its services to individuals. This is not surprising because the Agreement establishes that Rapid Response engages businesses, not individuals, as part of its business plan. Additionally, even assuming that Rapid Response did grant a limited written license to use its trademarks, which is not alleged, giving a dealer a limited license to use marks and logos does not support a finding that a dealer is an agent. *See Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1336 (7th Cir.1995) ("Although Calumet is allowed to use Caterpillar's name and trademark in its advertisements, the mere fact that Calumet uses Caterpillar's name does not render it an agent of Caterpillar, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise.").

Mr. Cunningham has failed to establish that Rapid Response communicated directly or indirectly to Mr. Cunningham any information that a reasonable person could find that Safeguard America had authority to conduct a telemarketing campaign on Rapid Response's behalf. Mr. Cunningham cannot, therefore, establish vicarious liability on the theory of apparent authority.

> **e.** **Mr. Cunningham's ratification is based upon improper conclusory allegations.**

The basis of Mr. Cunningham's claim that vicarious liability exists based upon the theory of ratification is that Rapid Response knew of its dealers' alleged illegal marketing and still "celebrated their conduct" and "sales accomplishments," "sponsored sales contests for distributers, and knowingly accepted the benefits in the form of millions of dollars in sales from these distributers marketing in an illegal fashion." Second Amended Complaint, ¶ 75. There are

19

no factual allegations set forth in the Second Amended Complaint to support the conclusory assertion that Rapid Response knew of any alleged illegal marketing. In fact, a close reading of paragraph 75 of the Second Amended Complaint shows the alleged knowledge is attached to the acceptance of benefits, not that it allegedly resulted from illegal marketing. Furthermore, there are no facts that establish that Rapid Response accepting any benefit from the alleged illegal marketing. Rapid Response was paid a fixed fee, regardless of the success of Safeguard America's or Homeland Security's telemarketing. See 2013 Addendum, ¶ 1.

To prove its third theory of vicarious liability, ratification, Plaintiff has the burden of showing that "'the benefits of the purportedly unauthorized acts are accepted [by Defendant] with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement.'" *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F.Supp.2d 1318, 1323 (S.D.Fla.2010) (quotation omitted); see also Restatement § 4.01. "Before one may infer that a principal ratified the unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed and the he approved of the act." *Id.* (quotation omitted).

In this case, the conclusory allegations that Rapid Response knowingly accepted benefits fails to establish a claim based upon ratification. The fact that Rapid Response was paid pursuant to the Agreement and 2013 Addendum, without more, does not show that Rapid Response was ratifying any alleged illegal conduct because there is no proof that Rapid Response had the requisite knowledge. Therefore, the Second Amended Complaint fails to state a claim based upon ratification.

4. **Count II of Mr. Cunningham's Second Amended Complaint should be dismissed because regulation 47 C.F.R. § 64.1200(d) was enacted pursuant to 42 U.S.C. § 227(d) for which there is no private right of action.**

Mr. Cunningham asserts a cause of action for alleged violations of 47 C.F.R. § 64.1200(d) pursuant to 47 U.S.C. § 227(c)(5). Second Amended Complaint, ¶ 84. Section

20

227(c)(5) provides a private right of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection*...." 47 U.S.C. § 227(c)(5) (emphasis added). Mr. Cunningham asserts that 47 C.F.R. § 64.1200(d) is an example of regulations prescribed under §227(c).

There is only one case that undersigned counsel could locate that directly addresses under what subsection of the TCPA 47 C.F.R. § 64.1200(d) was prescribed. In *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011), the District Court for the Southern District of Ohio was faced with "the question [of] whether an action for a violation of 64.1200(d)(4) arises under 47 U.S.C. § 227(d) or (b), which boils down to a question of whether the failure of an entity to identify itself and provide its address and phone number is a 'technical and procedural' violation." *Id.* at *3.

Initially, Section 227(d)(1)(A) states in pertinent part, "It shall be unlawful for any person within the United States… to make any telephone call using any automatic telephone dialing system, that does not comply *with the technical and procedural standards prescribed under this subsection*…." (emphasis added). Section 64.1200(d). In *Burdge*, the Court focused on a 1992 report and order issued by the Federal Communications Commission detailing the regulations issued pursuant to the TCPA, specifically section D of the report, entitled "Technical and Procedural Requirements," paragraph 53, which reads, in relevant part, "The TCPA mandates that all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), and we adopt this requirement in our rules, 64.1200(d)." *Burdge*, 2011 WL 379159 at *4 (*citing In the Matter of Rules & Regulations*

21

*Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992)). The *Burdge* Court went on to hold "that the regulations regarding identification and the provision of a telephone number or address found in 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA." *Id. Burdge*, 2011 WL 379159 at *4.

Because 64.1200(d) is a regulation prescribed under § 227(d) and not § 227(c), Mr. Cunningham cannot invoke § 227(c)(5) as the basis for his cause of action for alleged violations of 64.1200(d). *See* 47 U.S.C. § 227(c)(5)(providing a private right of action only for violations of the regulations prescribed under this subsection). Furthermore, there is no private right of action found in § 227(d). *See Kondaur Capital*, 2014 WL 8335868, at *4, n. 3 (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013)(noting Section 227(d) does not contain a private right of action)). Because there is no private right of action under § 227(d), Mr. Cunningham's claims based upon the alleged violation of the regulations prescribed under that subsection are not actionable and should be dismissed.

Finally, Mr. Cunningham cannot prevail under a claim brought pursuant to § 227(c)(5) because this section concerns calls to persons on the National Do–Not–Call Registry. *See Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015). Mr. Cunningham does not allege that he registered his cellular phone number with the National Do-Not-Call Registry. Because the Second Amended Complaint makes no allegation whatsoever about Mr. Cunningham being on a do-not-call list, and §227(c)(5) deals with do-not-call list claims, Mr. Cunningham cannot recover under this section. *Cunningham v. Addiction Intervention*, No. 3:14-0770, 2015 WL 1101539, at *1 (M.D. Tenn. Mar. 11, 2015).

Therefore, Count II of Mr. Cunningham's Second Amended Complaint should be dismissed.

**5.      Mr. Cunninngham's conclusory allegations as to the existence of a conspiracy fail to state a claim upon which relief may be granted.**

The Sixth Circuit has stated:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir.1985) (citations omitted). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

Mr. Cunningham's sole allegation to support a conspiracy charge is that the entities and corporate officers "agreed to break the law, specifically the TCPA in an attempt to solicit and sell alarm devices and monitoring services." Second Amended Complaint, ¶ 86.  This conclusory allegation is insufficient to establish a conspiracy claim. Mr. Cunningham fails to allege an "overt act" or "single plan."   Furthermore, to the extent this Court finds that an agency relationship existed between Rapid Response and the other defendants, the conspiracy claim would be barred by the intracorporate conspiracy doctrine. *See Irons v. City of Bolivar*, 897 F. Supp. 2d 665, 670 (W.D. Tenn. 2012)(noting that if all the alleged co-conspirators are agents, the intracorporate conspiracy doctrine applies).

**6.      The allegations against Mr. MacDonnell are conclusory and fail to establish a cause of action upon which relief may be granted.**

23

Mr. MacDonnell is the CEO for Rapid Response. In Tennessee, "a corporate director, officer or employee, if acting within the scope of their authority for the interests of the corporation should not be held liable because their action is treated as that of the corporation." *Rennell v. Through the Green*, 2008 WL 695874, at * 8 (Tenn.Ct.App. Mar.14, 2008) (citing *Cambio Health Solutions*, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn.2006)). However, a "corporation's separate identity may be disregarded or 'pierced' ... upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Oceanics Sch., Inc. v. Barbpour*, 112 S.W.3d 134, 140 (Tenn.Ct.App.2003). "When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as ... a controlling shareholder, where the two entities are in fact identical or indistinguishable[.]" *Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 438 (Tenn.Ct.App.2008).

Mr. Cunningham's Amended Complaint lists no facts that would survive Rule 8 requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Without more, Mr. Cunningham's claim against Mr. MacDonnell should be dismissed.

**7.     Mr. Cunningham's initiation of this action against Rapid Response and Mr. MacDonnell is in bad faith and, as such, they should be awarded their attorney's fees for having to defend this baseless lawsuit.**

Mr. Cunningham makes the conclusory allegation that Mr. MacDonnell had "direct, personal participation in causing the illegal telephone calls to be made as well as directly authorized the illegal telemarketing calls to be made." Second Amended Complaint, ¶ 53. Additionally, Mr. Cunningham asserts that Mr. MacDonnell failed to implement policies and procedures designed to comply with the TCPA. *Id.* at ¶ 54. Finally, Mr. Cunningham asserts that Mr. MacDonnell crafted the dialing campaign in an attempt to circumvent the TCPA. *Id.* These conclusory allegations are insufficient to establish personal liability. There are no factual

allegations that support this conclusion. Without more, Mr. MacDonnell cannot be held personally liable. *Menuskin v. Williams*, 145 F.3d 755, 762 (6th Cir. 1998).

**8.      Mr. Cunningham's request for attorney's fees is not supported by the TCPA.**

"[T]he TCPA does not provide for an attorney's-fee award." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 668 (2016), as revised (Feb. 9, 2016). Federal Rule of Civil Procedure 12(f) permits the court to strike, at any time, an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. Because attorney's fees are not recoverable, the request is immaterial and should be stricken.

**V.      CONCLUSION**

For these reasons, the Rapid Response Defendants pray that the Second Amended Complaint should be dismissed.

Respectfully submitted,

ORTALE, KELLEY, HERBERT & CRAWFORD

/s/ Michael T. Schmitt
Michael T. Schmitt, BPR #026573
P.O. Box 198985
Nashville, TN  37219-8985
(615) 256-9999
mschmitt@ortalekelley.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on August 19, 2016 a true and exact copy of this Memorandum has been served through the United States Mail on the following:

Craig Cunningham
5543 Edmondson Pike
Suite 248
Nashville, TN 37211
*Pro se Plaintiff*

Furthermore, on this same date, a true and exact copy of the foregoing was served on the following through the Court's CM/ECF system upon the following:

David A. Changas
Lewis Thomason King Krieg & Waldrop, PC
424 Church Street, Suite 2500
P. O. Box 198615
Nashville, TN 37219-8615
dchangas@lewisthomason.com
*Attorney for Homeland Security, LLC,*
*Roman, Coursey and Keith*

/s/ Michael T. Schmitt
Michael T. Schmitt

26