FILED
SEP 1 9 2016    DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

United States District Court
Middle District Tennessee

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)              **v.**                    **CIVIL ACTION NO.** 3:15-cv-00846
)
) Rapid Response Monitoring Services, Inc. et al
)      John/Jane Doe 1-10
)   Defendants.

**Plaintiff's Response in Opposition to the Defendants' Motions to dismiss**
**filed by Russell MacDonnell and Rapid Response Monitoring Services, Inc.**

1.  The Plaintiff's in this case hereby files this opposition to the Defendants'
    motions to dismiss.

### General Objections

2.  The defendants are bringing their motion improperly to function as a
    motion for summary judgment without a fair opportunity for discovery in
    the case. Even before all the parties have been identiifed in this case, the
    defendants are effectively trying to move for summary judgment without
    the parties having an opportunity to engage in discovery.

3.  As such, the Plaintiff is filing a seperate rule 56(d) motion and affidavit
    before the court in regards to this as the Plaintiff can not present essential
    facts to justify opposition in this case as the parties have not had an
    opportunity to engage in discovery.

**The Plaintiff can establish article III standing and has done so in his**
**complaint.**

1

4. The Plaintiff has made sufficient allegations to establish standing under Article III in this case just in the complaint. As such, the Defendant's motion must be denied.

5. The Plaintiff alleged statutory and actual damages in the complaint in paragraphs 78 and 79. Taking the Plaintiff's complaint as true, nothing further is required by the Plaintiff to meet the Article III pleading standard.

6. In **Mey v Got Warranty, Inc., 5:15-cv-101 (N.D West Virginia), 2016**, the court issued an exhaustive and detailed 18 page pre and post-Spokeo analysis of a TCPA claim in reference to damages and Article III standing and establishing an injury-in-fact. The court noted *"Spokeo thus created no new law"* and found *"that unwanted phone calls cause concrete harm. In additional all ATDS (automated telephone dialing systems) calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could be consequential."*

7. Interestingly enough, the Mey court noted that both the 4th Circuit in **Maryland v Universal Elections, Inc., 729 F. 3d 370, 377 (4th Cir 2013)** and **6th Circuit in Charvat v NMP, LLC 656 F 3d 440, 452-453 (6th Cir 2011)** found invasion of privacy being applied to unwanted telephone calls.

8. The Mey court also noted that the first few post-Spokeo case in decision addressing the TCPA squarely held that wasting the recipient's time is a concrete injury that satisfies Article III standing in **Booth v Appstack, Inc, 2016 WL 3030256 *5 (W.D. Wash May 25, 2016)** and **Rogers v Capital**

2

**One Bank (USA), NA 2016 WL 316592 (N.D. Ga, June 7, 2016)** where the Plaintiff established standing by alleging an unwanted phone calls to their cell phone numbers because the Plaintiff's cell phone lines were unavailable for legitimate use during the unwanted calls.

9. In summary, the Plaintiff has met his pleading burden by alleging actual damages in this case. The Plaintiff notes that his amended complaint was written and presented to the court as part of a Motion for Leave to amend in December 2015, well before the US Supreme Court ruled on Spokeo, and as such, should the court conclude that the Previous complaint is insufficient, the Plaintiff should be granted leave to amend his complaint given the new guidance in the Spokeo case.

## Multiple District and appeals courts have routinely shot down the defense argument of the Plaintiff being a "Professional"

10. In **Murray v GMAC Mortgage court, 434 F. 3d 948, 954 (7th Circuit 2006),** the 7th Circuit COA reversed the denial of class certification based on a similar "Professional Plaintiff" argument noting that the district court failed to explain why being a *"professional"* is is a dirty word. The court noted that the *"Professional"* label *"implies experience, if not expertise"* and noted that *"the district judge didn't cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."* Similar to this case, the Plaintiff Murray is alleged to have filed some 50 lawsuits between herself and family members, as is alleged by the Plaitiff, and the

3

defendants in this case have failed to cite any case in the entire country that limits the Plaintiff to sue only a subset of the offenders who have violated his rights.

11. In Murray, the court noted that *Murray just opened the mail as it arrived* and similarly, the Plaintiff merely answers the phone as it rings. The defendant's don't allege that they were entrapped by the Plaintiff or tricked into calling him by some actions of the Plaintiff.

12. Notably, in **King Architecture v CE Design Ltd., no 10-8050 (7th Cir 2011),** relying on the Murray decision, the 7th Circuit while noting that *"it seems odd that a business firm would want to bring junk-fax suits, and especially odd that a civil engineering firm would want to sue a manufacturer of metal building components for advertising its building components to the firm"* nevertheless the Appeals court held that *"CE's business model combines selling civil engineering services with filing class action junk-fax suits, and its not unlawful to be a professional class action plaintiff"*

13. The district court in **CE Design LTd v King Architectural Metals, No 09-c-2057 Dec 13, 2010** noted *"First, King complains that CE Design is a repeat plaintiff having brought more than one hundred TCPA suits against other defendants based on unsolicited fax broadcasting"* and noted that *"in its sur reply, King appears to advance those considerations to argue that CE Design lacks standing"*. According to King *"the evidence shows that Mr. Pezl is not a victim of unsolicited faxes, but an opportunist who invites*

4

them. One who consents to an act cannot be injured by it, and one without injury has no standing under Article III to bring an action on his own behalf" Sur Reply at 6.

14. The court held "*This argument is without merit. Simply put, opportunism of the kind alleged by King does not deprive a party of standing. Noting in the court's decision intimates that this brings CE Design's standing into question."*

15. Other courts have held similar rulings, for example **Fitzhenry v ADT Corp, No. 14-80180, 2014 WL 6663379 at 5 (S.D. FLA Nov 3, 2014)** ruled that the actions taken by the Plaintiff to create a home enviornment to allow him to document telemarketing calls better than most consumers, specifically having several different phone numbers at his home to get a higher volume of telemarketing calls, was <u>not</u> outside the zone of interest protection, because the Plaintiff alleged in his complaint that the calls were "unwanted" and the defendants have not cited any contradictory statements by the Plaintiff.

16. The court held that the Plaintiff in the Fitzhenry case did have standing to sue despite the Defendant's argument that the Plaintiff was outside of the zone of interest because he pursues TCPA claims as a source of income, according to deposition testimony of Fitzhenry's wife.

17. Similarly in the Murray case, the Fitzhenry court noted that the *"defendants have not cited any authority for the proposition that a so called "Professional Plaintiff" is outside of the TCPA's statutory zone of*

5

interest. Although the Plaintiff may have created a home enviornment that allows him to document telemarketing calls better than most consumers, the court is not convinced that the Plaintiff is outside of the TCPA's zone of interest."

18. The 6th Circuit court of appeals has seen it as a consumer's duty to enforce the TCPA as them acting as private attorney Generals as intended by Congress noting in **Charvat v EchoStar Satellite, LLC, 630 F. 3d 459, 461 (6th Cir 2010)** *"Plaintiff has not been shy in taking on the role of a private attorney general under the TCPA. Since 1998, he has filed claims against at least twelve defendants in at least thirteen lawsuits under act."*

## The Defendants hang all their hopes on the Professional Plaintiff argument by citing the recent Stoops v Wells Fargo Bank, NA case

19. First, in Stoops, the court ruled on a <u>motion for summary judgment,</u> not a Motion to dismiss, which is telling as to the true intentions of the Defendants, which is to convert their Motion to dismiss to a Motion for Summary Judgment by seeking the court to rule on the merits of the case, as opposed to the sufficiency of the complaint.

20. Furthermore, the Stoops court noted that *"several district courts, including district courts within the Third Circuit Court of Appeals have held that a Plaintiff demonstrates a violation of privacy interests, and therefore an injury in fact after receiving automated calls"*, citing **Schumacher v Credit Protection Assn, No. 4: 13-cv-164, 2015 US Dist Lexis 132752 at 15 (S.D Ind Sept 30, 2015)** and **Martin v Leading Edge Recovery**

6

**Solutions, LLC, No 11-cv-5886, 2012, US Dist Lexis 112795 at 10 (N.D. III Aug 10, 2012)** *(concluding that the Plaintiff's privacy interests were violated because "they were forced to tend to unwanted calls")*.

21. Notably, the Stoops court distinguished the facts of the Stoops case stating *"As the parties recognize, however, the facts of this instant case have not arisen in other TCPA actions because Plaintiff has admitted that she files TCPA actions as a business"*. The Stoops court analyzed the Plaintiff's privacy rights and violations thereof as a central theme of their analysis into the standing argument as well as the undisputed sworn deposition testimony by Plaintiff Stoops in the case. None of these facts or unique elements are before the court.

22. The Stoops court did not reach their conclusion because of accusations by the Defendant's counsel that the Plaintiff was a *"Professional Plaintiff"*, nor did the court reach their conclusion by anything said in any of the phone calls or statements in the pleadings of any of the parties. The court went to the extent of quoting line by line the deposition testimony which apparently influenced their analysis to reach this conclusion, in which the Plaintiff volunteered that they file TCPA actions as a business.

23. The only argument that won in the Stoops court was the attack on constitutional standing, but this was successful, NOT because of some allegation or determination that the Plaintiff in Stoops was a "Professional" versus an amateur as the defendants allege here.

24. The Stoops court added 3 pages of Deposition testimony[1] and concluded *"As her testimony establishes, Plaintiff's privacy interests were not violated when she received calls from the Defendant. Indeed, Defendant's calls did not adversely affect the privacy rights that the TCPA is intended to protect."* and added *"Because Plaintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits, the calls are not a nuisance and an invasion of privacy."* [2] The Stoops court held *"The Plaintiff was not required to tend to unwanted calls"* citing the Martin case, and *"The court therefore must reject Plaintiff's argument that she suffered an injury in fact because her privacy rights were violated"* On page 28 of the Stoops Opinion, the court again relied on the sworn deposition testimony of Plaintiff Stoops in determing that *"Plaintiff's testimony once again establishes that she has not suffered an injury in fact"*.

25. In the Stoops Opinion, the court held *"Because Plaintiff has admitted that her only purpose in purchasing her cell phones and minutes is to receive more calls, thus enabling her to file TCPA lawsuits, she has not suffered an economic injury".*[3] Distinguishable from the present case before the courts, the Plaintiff has made no statement that he only buys cell phones and minutes to recieve calls enabling him to file TCPA lawsuits, and the Defendants offer no such evidence or statements or even an argument to this point.

---

[1]See pages 22-25 of the opinion
[2]See page 25 of the opinion.
[3]See page 29 of the opinion

26. In the Stoops Opinion on, they cite to the Fitzhenry v ADT Court ruling, which is the one and only reference to the "Professional Plaintiff term" in the 38 page opinion, distinguishing the Stoops from the Fitzhenry case by stating *"the evidentiary record in Fitzhenry did not contain the extensive and undisputed admissions present in this case"*, referring to the admissions of filing TCPA lawsuits as a business.[4]

27. Similarly, there are no extensive and undisputed admissions present in this current case anything like the Stoops case, nor do the Defendants allege or cite any statements by the Plaintiff on par with statements by Stoops in Sworn deposition testimony. Similar to the *Fitzhenry* case, the Plaintiff describes the calls as *"unwelcome phone calls"* in paragraph 78 of the complaint, the Fitzhenry court also noted that the Plaintiff described the calls as unwanted, which must be accepted as true at the Motion to dismiss phase of the case. Furthermore, even after suing the defendants for illegal telemarketing in July 2015, which is the most clear sign that calls are unwelcome, the defendants continued to call the Plaintiff through 2016.

28. In this case, the Plaintiff was required to tend to unwanted, calls, and even deal with threats of violence from agents of Safeguard America and Rapid Response upon notifying the defendant's agents he had already filed a lawsuit against them.

29. Distinguishable from Stoops, in this case, the Defendants fail to state how calling someone 28 times and more than 10 times in the same day is not

---

[4]See page 30 of the Stoops opinion

an invasion of the Plaintiff's privacy. The Plaintiff has not admitted that his privacy was not violated, nor has he made any claim that he files suit under the TCPA as a business. The only claim that the Plaintiff files TCPA lawsuits as a business comes from the Defendant's counsel in a motion, not from the Plaintiff in sworn deposition testimony.

30. One point the Plaintiff must clarify is that the defendant's claim that the Plaintiff knew that the safety survey calls without more, likely did not violate the TCPA on page 8 of their motion. This is incorrect. The initial 28 calls absolutely did violate the TCPA as they were initiated by an automated telephone dialing system to the Plaintiff's cell phone without consent, among other violations. The Plaintiff just didn't know who the calls were being placed by or on behalf of at the time until the subsequent calls The subsequent calls don't make the original 28 calls any more or less illegal.

31. The Defendant's only evidence of the Plaintiff filing TCPA suits is the number of lawsuits filed, which every court in the country and multiple appeals courts including the 6th Circuit have rejected time and again, and the alleged "baiting" of the defendants, by merely asking them to identify themselves and the partner service providers, which the TCPA requires a telemarketer to do without any prompting by the called party.[5] Apparently asking a company to follow the law now constitutes running a TCPA business.

---

[5] See 47 CFR 64.1200(d)(4) **"Identification of sellers and telemarketers.** *A person or entity making a call for telemarketing purposes must provide the called paty with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."*

32. In Stoops, the parties had gone through discovery and depositions, in which Stoops made the statements that she filed TCPA lawsuits as a business. These statements were neither in Stoops complaint, nor are they in the Plaintiff's complaint, as the parties in this case have yet to even have a scheduling order, much less engage in full discovery. Nowhere in the calls presented or even the Defendant's argument do they cite any statement by the Plaintiff that he is suing under the TCPA as a business and bought cell phones with the intent and desire of getting telephone calls that are going to violate the TCPA.

33. Third, the Defendants claim to rely on the telephone recordings shared by the Plaintiff, but these recordings do nothing but cement who called him and solidifies that the calls in question happened. Nowhere in the calls does the Plaintiff state that he files TCPA lawsuits as a business. Nowhere in the calls presented does the Plaintiff state that he is a Professional Plaintiff.

34. The Defendants do not deny that they have a business relationship with Defendant Safeguard America, but actually reinforce this by providing evidence of the contract between Safeguard America and Rapid Response, which naturally corresponds to the parties identified in the calls. The Defendants do not allege that there is a case of mistaken identity, and some other company named Rapid Response is the monitoring company that is the party being described in the calls. The Defendants do not deny that they called the Plaintiff 28 times before he

answered the phone, and the recordings, nor the defendants arguments do not establish how those 28 calls would not violate the TCPA.

35. Furthermore, the calls represent an incomplete record, as they do not offer a complete picture of everything that was said or everything that transpired in the case. There are many, many more calls, recordings, and other evidence which is not yet before the court and is relevant to an actual analysis of the merits of the case.

36. As the court can see from an actual analysis of the Stoops case, it is distinguishable in almost every way from the current case before the court. The Plaintiff is has not made any admissions as Stoops did which cast doubt on his privacy interest and injury-in-fact, nor do the defendants make any sort of allegation of this. The defendants merely claim that because they allege the Plaintiff is a so called "Professional Plaintiff" by filing 50+ TCPA cases that the Plaintiff therefore lacks an injury in fact because they say so.

### The Plaintiff has prudential standing to sue

37. The Plaintiff's prudential standing is not implicated either. The Defendant's simply make the flat assertion that because the defendants allege the Plaintiff files TCPA actions as a business, the Plaintiff therefore lacks prudential standing and is outside the zone of interest simply because they say so.

12

38. The Defendants don't cite any authority, statements by the Plaintiff or make an argument as to why the Stoops case is applicable to the current case before the court.

39. The only contested issue in Stoops and arguably at best in this case, would be if the Plaintiff is within the zone of interest intended to be protected by the TCPA. According to the Stoops court, on page 33, the zone of interest *"test denies a right of review if the Plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that that Congress intended to permit the suit"*

40. Again, as similar to the injury in fact analysis by the Stoops court, the two central tenants analyzed in the Zone of interst inquiry were the analysis of the privacy interest in comparison to the undisputed sworn deposition statements by Stoops.

41. The Stoops court noted on page 34 of the opinion *"In discussing constitutional standing above, the Court examind in depth Congress's intention to protect consumers from the proliferation of intrusive nusiance (telemarketing) calls to their homes by enacting the TCPA"* and quoted the Third Circuit Court of Appeals stating that *"The Third Circuit explained that in passing the Act, Congress was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance"* concluding that *"a regular user of the phone line who occupies*

13

the residence being called undoubtably has the sort of interest in privacy, peace, and quiet that Congress intended to protect" and *"The TCPA is a remedial statute that was passed to protect consumers from <u>unwanted</u> automated telephone call"* with emphasis added on "unwanted" by the court."

42. Repeated analysis by the Stoops court revolves around the zone of interest are privacy and unwanted telephone calls, but the court held *"As discussed above, Plaintiff has not suffered an injury in fact because her privacy and economic intersts were not violated when she received calls from defendants"* and central to that conclusion were the statements by Stoops to which the court concluded *"Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages are not among the sorts of interests the TCPA was specifically designed to protect."* and *"Given her admissions, which are described above, the court finds that Plaintiff's interests are so marginally related or inconsistent with the purposes implicit in the TCPA that it cannot reasonably be assumed that Congress intended to permit the suit."*

43. Just as with the injury in fact analysis, the zone of interest analysis in Stoops was determined to not apply to Stoops due to the sworn deposition testimony by Stoops, not the allegations by the Defendant's counsel. The Defendants in this case offer no evidence of any statements by Plaintiff Cunningham similar to Plaintiff Stoops. Nothing in the Stoops decision was

14

predicated on the Defendant's allegations of the Plaintiff being a
"professional Plaintiff" and nothing in the Stoops decision involved any
analysis in the number of lawsuits filed by Stoops, as alleged by the
Defendants in this case.

**Rapid Response is a Seller as defined by the TCPA and it is currently
unclear as to who initiated the telephone calls**

44. Given the complete absence of formal discovery in this case,  and the
spoofing of the caller ID with a non-working number, it is entirely
premature to conclude anything about who inititated what phone calls to
the Plaintiff.

45. Although Rapid Response claims to have not initiated the phone calls to
the Plaintiff, there is no evidence at this point to determine who placed the
calls, and the Plaintiff can't possibly obtain this information at this point
even with a subpoena. The only thing that is clear is that the party that
placed the calls lied about the caller ID information and the calls led to the
Plaintiff standing in front of an agent of Rapid Response with a contract
between the Plaintiff and Rapid Response in their hands. It very well could
have been Rapid Response Monitoring that initiated the calls, but without
discovery, it is unclear if direct liability would attach to the Defendant
Rapid Response or vicarious liablity.

46. Either way, Defendant Rapid Response is directly liable for the 227(b)
violations or vicariously liable for the 227(b) violations. It just remains to be
seen who initiated the calls in question.

15

47. For reference, the TCPA defines a "telemarketer under 47 CFR 64.1200(f)(11) as the person or entity that initiates a telephone call or message for the purchase or rental of or investment in property, ogods, or services, which is transmitted to any person.

48. By contrast, the "Seller" is defined in the TCPA under 47CFR 64.1200(f)(9) as the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of or investment in property, goods, or services, which is transmitted to any person. Rapid Response may very well be both a seller and Telemarketer if they initiated calls on for the purpose of selling their services.

49. How do we know in this case that Rapid Respone is at a minimum a seller as defined by the TCPA? Aside from their recorded admissions in the phone call, an appointment was scheduled with an agent of Rapid Response Inc. that met the Plaintiff carrying an "**Alarm Monitoring Service Agreement"** contract for services between Craig Cunningham and Rapid Response, Inc., that states *"This agreement is made on the 12th day of March by and between Rapid Response Monitoring Services, Inc, and Item 1 ABOVE (subscriber), which lists the Plaintiff's name of Craig Cunningham,"* after at least 28 illegal telephone calls.[6]

50. How do we know that Safeguard America had Actual authority from Rapid Response to act on their behalf? Because the agent the Plaintiff met with

---

[6]See Plaintiff's Exhibit A and B, Alarm Monitoring Service Agreement dated March 12, 2016. The Plaintiff notes that the original document is legal paper and the Plaintiff's scanner only fits letter, so he made a copy of the top and bottom of the document that states the name of the parties.

held a contract with the Plaintiff's name on it binding him to an agreement with Rapid Reponse.

51. In the Defendant's motion, they state *"Absent form the Second amended complaint are any factual allegations that he had any personal contact with or even an indirect route of communication from Rapid Response, such that it would be reasonable for him to believe that Rapid Reponse cloaked Safeguard America with authority to market alarm services."* This is again great summary judgment material in the form of a motion to dismiss, but it is contradicted by the contract with the Alarm Monitoring Service Agreement that was presented by an agent of Safeguard America and Rapid Response to the Plaintiff to sign in March of 2016.

52. The defendants claim Safeguard America was not finding customers for Rapid Response, but this is directly contradicted by the contract bearing the Plaintiff's name and Rapid Response to sign the Plaintiff up for Alarm monitoring services through Rapid Response.[7] The Defendants admit that they had the ability to enter customer information in Rapid Response's computer system, which is another tenant of a finding of actual authority.

53. Rapid Resposne knew that their agents were violating the TCPA, if by nothing else, the Plaintiff's lawsuit in July 2015. Despite this, Rapid Response continues to this day to do busines with Safeguard America and accept customers from Safeguard America and place calls to the Plaintiff. The Plaintiff certainly can substantiate and make valid allegations against the defendants for continuing to do business with Safeguard America after

---

[7]See Plaintiff's Exhibits A and B

the Defendant's were sued by the Plaintiff for calls placed in 2015 initially as calls to the Plaintiff continued multiple times in 2016, one of which culminated in the Plaintiff being presented with a contract to sign on March 12, 2016 from Rapid Response Inc.[8]

54. As stated previously, the defendants are seeking to turn this motion to dismiss into a Motion for Summary judgment by seeking a decision by the court on the merits of the case and not the sufficiency of the pleadings, and this is another example of an improper summary judgment argument in the form of a motion to dismiss. It is not a ripe issue for the court to determine if the Defendants are a seller as defined by the TCPA, as the Plaintiff's allegations must be accepted as true, and the Plaintiff alleges they are sellers.

### Rapid Response was conducting direct sales to consumers for alarm monitoring services.

55. That said, despite the Defendant's claim they are not a seller under the TCPA because Safeguard America purchased the right to connect its subscribers to the central stationand Safeguard America resells this service to its subscribers.

56. The actual agreement between Defendant Rapid Response and Security Systems, Inc. is irrelevant at this point in the case beyond the correct name and identies of the parties.

57. The assertion by the defendants that Rapid Reponse doesn't gain customers directly is contradicted by the contract presented to the Plaintiff

[8] See Plaintifff's Exhibit A and B

18

that sought to establish a contractual relationship between the Plaintiff and Rapid Response by an employee of Safeguard America and Rapid Response after an illegal call by Rapid Response or Safeguard America on March 12, 2016 which is attached as exhibits A and B.[9]

58. Presenting a contract for services is a direct communication from Rapid Response to the Plaintiff after an illegal telemarketing call set an appointment for an alarm system installation. As such, the Plaintiff can establish vicarious liability on the theory of apparant authority.

59. Rapid Response claims they are not accepting benefits from the illegal marketing, but the contract bearing the Plaintiff and Rapid Response's name contradicts that assertion. This is evidence of ratification by Rapid Response and actual authority. First, Rapid Response was on notice by the Plaintiff's lawsuit in July 2015, second, they continued to allow Safeguard America to make illegal telemarketing calls, which culminated in an appointment with the Plaintiff in March of 2016 during with the Plaintiff was presented with a contract directly binding the Plaintiff by name with Rapid Response.

60. Contrary to their false assertions, Rapid Response DOES charge subscribers individually, and DOES profit from each new subscriber, if not why then present an **"Alarm Monitoring Service Agreement"** for the Plaintiff to sign that contractually obligates the Plaintiff to pay Rapid

---

[9]See Exhibit A the top of the "Alarm Monitoring Service Agreement" and Exhibit B the bottom of the "Alarm Monitoring Service Agreement"

19

Response directly? Why contract directly with the Plaintiff if as they claim the contract was going to be purchased from Safeguard America?

61. As a party in line to directly benefit and profit from the sale of alarm services and contracting directly with the Plaintiff, they would naturally be vicariously liable for the calls which advertise their services for which they would directly profit.

**Count II of the Plaintiff's second amended complaint should not be dismissed as there is a private right of action under 47 CFR 64.1200(d).**

62. The Defendants claim there is only one case that they could locate that directly addresses under what subsection of the TCPA 47 CFR 64.1200(d) was prescribed. Apparently they overlooked a controlling 6th Circuit appeals court case that deals with the issue directly.

63. In **Charvat v NMP, LLC 656 F. 3d 440, 445-46 (6th Cir. 2011)**, the 6th Circuit had a 2 page analysis just on 227(c)(5) violations, on pages 10 an 11 of the PDF of the opinion. Specific allegations by Plaintiff Charvat in that case included that the Defendant *"Failed to provide the name of the person or entity on whose behalf the call was being made in violation of 47 CFR 64.1200(d)(4) (count two); (3) Failed to provide the telephone numb er or address at which the person or entity on whose behalf the call was being made may be contacted in violation of 64.1200(d)(3) (Count Three)"* among other violations of 47 CFR 64.1200(d). These allegation are identical to the Plaintiff's claims.

64. The 6th Circuit held "*The more difficult question is whether Charvat may recover statutory damages under both the automated call subsection of the TCPA 47 USC 227(b) and the do-not-call-list subsection, 47 USC 227(c) as implemented in 47 CFR 64.1200(d). We first look to the statutory language. The fact that the statute includes separate provisions for statutory damages in subsections b and c suggests that a plaintiff could recover under both.*"

65. Additionally, the 6th Circuit noted "*the two subsections, moreover target different harms: Subsection (b) imposes greater restrictions on automated telephone calls and transmissions, which Congress found to be more of a nusiance and greater invasion of privacy than calls placed by live persons...Subsection (c) and its accompanying regulations in 47 CFR 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to all calls-live or automated-initiated for telemarketing purposes to reidential telephone subscribers*

66. Wrapping it up, the 6th *Circuit* held : "*By enacting separate private right of action provisions, each including a statutory damages provision, Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute minimum procedures for maintaining a do-not-call list as well as the additional harm of the call being automated. Recovery of damages for the two seperate provisions does not upset Congress's balance in setting damages fair to both the consumer and telemarketer.*"

67. The 6th Circuit brings the argument home concluding: *"We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements of 47 USC 227(b)(3) and $1500 for a willful or knowing violation of the do-not-call-list requirements, 227(c)(5) -even if both violations occured in the same telephone call. Charvat alleges that the defendants willfully or knowingly violated subsection (b)'s automated call requirements and subsection (c)'s do-not-call-list requirements in thirty-one of the telephone calls. Thus, Charvat's maximum damages for the thirty-one telephone calls that he alleges violated both sets of requirements total $93,000. (*31 x $3,000)*.*

68. The Plaintiff notes that he has been awarded $3,000 per call multiple times for alleged violations of 47 USC 227(b) and 47 USC 227(c)(5) as codified by the regulations in 47 CFR 64.1200(d) in **Cunningham v Lilly Management and Marketing, 3:14-cv-02399** in the report and recommendation dated July 7, 2015 docket item 59 and **Cunningham v Lexington Doc Prep, LLC, 3:15-cv-00467**, docket item 90 ordered May 16, 2016.

69. The Defendants cite **Cunningham v Addiction Intervention, Inc,** 3:14-cv-0770 as evidence that the Plaintiff can't recover under both 227(b) and 227(c)(5), but this is misplaced. First, the Plaintiff notes that Judge Aleta Trauger signed both opinions in Cunningham v Addiction and later the Cunningham v Lexington Doc Prep LLC case, in which the judge did award the Plaintiff $3,000 per call for violations of 227(b) and 227(c)(5).

22

70. Frankly the Plaintiff did a poor job of explaining the 6th Circuit Charvat v NMP opinion to the court in the earlier Cunningham v Addiction case and the Plaintiff failed to allege violations of 227(c)(5) in the original complaint and as such was unable to recover them later in a default judgment in the Cunningham v Addiction Case. The Plaintiff was much more clear and detailed in the Cunningham v Lexington Doc Prep case and alleged violations of 227(c)(5) was therefore correctly awarded $3,000 per call.

71. Additionally, the Do-not-call policy violations have nothing to do with the National Do-not-call list and there is nothing in the statute or Charvat v NMP, LLC that requires the Plaintiff to have his number on the National do-not-call list to have standing to sue, but rather the term do-not-call list relates to the requirements of a telemarketer to have an internal do-not-call list that they maintain and put consumers on who request it.

72. In Conclusion, the Plaintiff is able to recover $1500 per call for violations under 227(b) and there is a private right of action under 227(c)(5) as the 6th Circuit said so in Charvat v NMP, LLC.

**The Plaintiff need not pierce the corporate veil to impute liability to Mr. MacDonnell as a corporate officer.**

73. Multiple courts going back several years, including courts in the 6th Circuit have held that it is not necessary to pierce the corporate veil in a TCPA action to hold a corporate officer liable for violations of the law.

74. In Texas v American BlastFax, Inc., the 5th Circuit COA held *"However, if the officer directly participated in or authorized the statutory violation, even*

23

though acting on behalf of the corporation, he may be personally liable",

citing US v Pollution Serv. of Oswego, Inc., 763 F.2d 133, 134-35 (2nd Cir

1985) additionally, the court held "The "well-settled" tort rule provides that

"when corporate officers directly participate in or authorize the commission

of a wrongful act, even if the act is done on behalf of the corporation, they

may be personally liable."

75. Additionally, courts in the 6th circuit have ruled directly on the issue and

found corporate officers can be liable in a TCPA case without piercing the

corporate veil: "*The Defendants do not dispute that Beason personally*

*participated in the payment of and authorization for the fax ads. As a*

*result, he is personally liable for the violation of the TCPA*"[10]

76. The Plaintiff alleges direct participation on the part of Russell MacDonnel

in this case and as such he should be held liable for his actions. Nothing

more is required with a TCPA claim, and thus piercing the corporate veil is

irrelevant.

**The Defendant's claim that the Plaintiff's lawsuit against both Rapid**

**Response and Mr. MacDonnell is in bad faith and they should be**

**awarded attorney's fees for having to defend this lawsuit.**

77. In a strange twist, the Defendants attempt to argue that the Plaintiff

brought this case in bad faith, but fail to state what bad faith actions the

Plaintiff engaged in by bringing this lawsuit. If the Plaintiff had sued the

wrong party, and even after notice of this wrong party, the Plaintiff

---

[10]**Jackson Five Star Catering, Inc. v. John R. Beason and Tax Connection Worldwide, LLC**,
No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)

continued to prosecute the case, it could be argued that the Plaintiff

engaged in bad faith litigation. In this case, the Defendants are the correct

party, and the defendants merely claim they should be awarded attorney's

fees because they say so and only complain loosely complain that he

Plaintiff made conclusory allegations with regards to Mr. MacDonnell.

78. A defendant claiming bad faith *"must show the Plaintiff's conscious doing*

*of a wrong because of a dishonest purpose or moral obliquity"* See Shah v

Collecto, Inc., No. Civ A. 2004-4059, 2005, WL 2216242 at 14 (D. Md.

Sept 12, 2005) (Quoting Black's Law dictionary, 139 (6th ed. 1990))

79. A bad faith Lawsuit is one *"where the suit is so completely without hope of*

*succeeding that the court can infer the plaintiff brought the suit to*

*harass...rather than to obtain a favorable judgment"* see Grant v. Barro,

No. 07-194-JJB-DLD, 2007 WL3244986, at *1 (M.D. La. Nov. 1, 2007)

80. None of these circumstances exist here, and the Plaintiff has not been put

on notice about whatever alleged bad faith actions the defendants

complain of that should warrant them being awarded attorney's fees.

81. The Plaintiff withdraws his request for attorney's fees.

Craig Cunningham
Plaintiff,

Respectfully submitted, September 19, 2016
5543 Edmondson pike, ste 248
615-348-197

25

Case 3:12-cv-00846... Document 1-4 Filed 03/19/16 Page 26 of 28 PageID #: 394

| DEFAULT # | | TIME ZONE | TEST TIMER | RESIDENTIAL ☑ |
|---|---|---|---|---|
| | | | ☐ DAILY | COMMERCIAL ☐ |
| | | | ☑ WEEKLY | OTHER _____ |
| PHONE NUMBERS CONNECTED TO COMMUNICATOR: | | | ☐ MONTHLY | |

#1 _____  #2 _____

## LOCAL AUTHORITIES

| AGENCY CODE | AUTHORITY | TELEPHONE NUMBER |
|---|---|---|
| F = Fire | | ( ) |
| P = Police | | ( ) |
| E = Emer./Medical | | ( ) |
| G = Guard | | ( ) |
| O = Other | | ( ) |

## AUTHORIZED INDIVIDUALS TO BE NOTIFIED (in sequence)

| NAME | TELEPHONE NUMBER | PHONE CODE |
|---|---|---|
| 1. | ( ) | |
| 2. | ( ) | |
| 3. | ( ) | |
| 4. | ( ) | |
| 5. | ( ) | |
| 6. | | |

*Phone Code Descriptions Are: H = Home  W = Work  C = Cellular  P = Pager

## ALARM CONDITION RESPONSE OPTIONS

| ZONE | AGENCY CODE | DESCRIPTION | VERIFY | DISPATCH | NOTIFY RP |
|---|---|---|---|---|---|
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 2 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 3 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 4 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 5 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |

* Agency Codes Are: P = Police, F = Fire, E = Emergency Svc, G = Guard, O = Other

| USER ID | PASSCODE | A.L.* | NAME | USER ID | PASSCODE | A.L.* | NAME |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*A.L. = Authority Level

This agreement is made this __12__ day of __March__ , by and between Rapid Response Monitoring Services, Inc. ("Company") and ITEM "1" ABOVE (Subscriber).

Location of Subscribers ("Premises") ITEMS "2.," "3.," ABOVE. In consideration of and subject to the terms and conditions herinafter set forth Company agrees to monitor and Subscriber agrees to permit Company to monitor a [ ] U.L. [ ] remote programmable [ ] commercial [ ] residential signaling system _____ ("Dealer"). ("System") in subscribers Premises as a subcontractor of _____

SUBSCRIBER SPECIFICALLY ACKNOWLEDGES AND ACCEPTS PARAGRAPHS 3 AND 6 HEREOF. TERMS AND CONDITIONS ON THE REVERSE SIDE ARE AN INTEGRAL PART OF THIS CONTRACT. SUBSCRIBER ACKNOWLEDGES RECEIPT OF A COPY OF CONTRACT. READ THE FRONT AND REVERSE BEFORE SIGNING. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OR REVERSE HEREOF, INCLUDING ANY

# ALARM MONITORING SERVICE AGREEMENT

AL #445, AK # COMPANY#121, CA #ACO 5480, CA #ACB 5700, CT ELC.0186120, DC #02-168, DE Fire #CSRSL-0003, FL #127-001246, MD #107-904, MI 3601295230 , NY #1300026582, OK #648, OR #0582, RI #5875, TN #834, TX #B06580, TX Fire #ACT-2020, UT #460044B-6501, VA #11-2650, WA #602 223 440

| DATE | DEALER # | SYSTEM #/ACCOUNT # | POLICE ALARM PERMIT # | FIRE ALARM PERMIT # |
|------|----------|--------------------|-----------------------|---------------------|
| 03/12/16 | 90 | | | |

1. NAME **Craig Cunningham**

**ATTACHED RIDERS**

| DEFAULT # | | TIME ZONE C | TEST TIMER | RESIDENTIAL ☑ |
|-----------|--|-------------|------------|----------------|
| | | | ☐ DAILY | COMMERCIAL ☐ |
| PHONE NUMBERS CONNECTED TO COMMUNICATOR: | | | ☑ WEEKLY | OTHER _____ |
| #1 _____ | #2 _____ | | ☐ MONTHLY | |

## LOCAL AUTHORITIES

| AGENCY CODE | | AUTHORITY | TELEPHONE NUMBER |
|-------------|--|-----------|------------------|
| F | = Fire | | ( ) |
| P | = Police | | ( ) |
| E | = Emer./Medical | | ( ) |
| G | = Guard | | ( ) |
| O | = Other | | ( ) |

## AUTHORIZED INDIVIDUALS TO BE NOTIFIED (in sequence)

| | NAME | TELEPHONE NUMBER | PHONE CODE |
|--|------|------------------|------------|
| 1. | | ( ) | |
| 2. | | ( ) | |
| 3. | | ( ) | |
| 4. | | ( ) | |
| 5. | | ( ) | |
| 6. | | ( ) | |

*Phone Code Descriptions Are: [H] = Home [W] = Work [C] = Cellular [P] = Pager

## ALARM CONDITION RESPONSE OPTIONS

| ZONE | AGENCY CODE | DESCRIPTION | VERIFY | DISPATCH | NOTIFY RP |
|------|-------------|-------------|--------|----------|-----------|
| 1 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 2 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 3 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 4 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| 5 | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |

United States District Court
Middle District Tennessee

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)            v.                    **CIVIL ACTION NO.** 3:15-cv-00846
)
) Rapid Response Monitoring Services, Inc. et al
)       John/Jane Doe 1-10
)   Defendants.

### Plaintiff's Certificate of Service

I certify that on September 19, 2016, the plaintiff served the Defendants with a
copy of this motion via USPS first class mail to:

Stephen Barham of Chambliss, Bahner, and Stophel, PC Liberty Tower, ste 1700
605 Chestnut Street Chattanooga, TN 37450

Michael T Schmitt of Ortale, Kelley, Herbert, and Crawford, PO Box 198985,
Nashville, TN 37219

Craig Cunningham
Plaintiff,

5543 Edmondson Pike ste 248
Nashville, TN 37211
9/19/2016

26