# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:15-cv-00846** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **RAPID RESPONSE MONITORING** | ) | |
| **SERVICES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court is a Report and Recommendation of the Magistrate Judge ("R&R") (Doc.

No. 81) making the following recommendations:

1.  The motion to dismiss (Doc. No. 58) filed by Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell ("RRMS Defendants") should be granted because Plaintiff Craig Cunningham lacks Article III standing to pursue his claims;

2.  If Cunningham is held to have standing, Cunningham's request for leave to conduct limited discovery on the issue of personal jurisdiction with regard to David Roman, John Coursey, and John Keith ("Individual Defendants") (Doc. No. 78) should be denied on the merits because Cunningham has failed to show any persuasive basis upon which he should be permitted to conduct additional discovery to support his twice-amended complaint, and Individual Defendants' Motion to Dismiss (Doc. No. 70) should be granted; and

3.  To the extent that the RRMS Defendants request an award of attorney's fees in their favor (Doc. No. 59 at 24-25), such a request should be denied at this time as premature.

Plaintiff has filed Objections (Doc. No. 84) and Amended Objections (Doc. No. 85). The Court

has reviewed the R&R and the parties' briefs and has conducted a de novo review of the record.

Insofar as Plaintiff's objections pertain to Recommendations 2 and 3, they are **OVERRULED** and

the Magistrate Judge's Recommendations are **ADOPTED**. For the reasons discussed below, the

Court **DECLINES TO ADOPT** Recommendation 1 and the RRMS Defendants' Motion to Dismiss will be **GRANTED** in part and **DENIED** in part. Individual Defendants' Motion to Dismiss will be **GRANTED**. Count II will be dismissed as to all parties, and Counts I and III will be dismissed as applied to Russell MacDonnell, David Roman, John Coursey, and John Keith. Count I will also be dismissed insofar as it relies on a theory of apparent authority against RRMS Defendants. Cunningham's request to conduct discovery on the question of personal jurisdiction (Doc. No. 78) will be **DENIED**.

## I. BACKGROUND

Cunningham is a Davidson County resident who claims to have received at least twenty-eight phone calls, sometimes only one or two seconds apart, from callers purporting to be conducting a "safety survey" but in fact marketing home security systems and related services. (Doc. No. 57 at ¶¶ 1, 13, 27.) Cunningham participated in one of those calls—he says, for the purpose of ascertaining the identity of the party responsible—and found that it consisted of a pre-recorded message instructing him to press '1' to speak to an agent about the survey. (Id. at ¶¶ 13–14.) The marketing effort turned out to be in support of a deal pursuant to which the recipient would accept the installation of a "free" home security system by Security Systems Inc. d/b/a Safeguard America ("Safeguard America") and would agree to pay ongoing fees for monitoring services to be provided by Rapid Response Monitoring Services, Inc. ("RRMS"). (Id. at ¶¶ 35–43.)

Cunningham indicated to follow-up callers that he was interested in the offer, and he met with the installer, but the Complaint is somewhat unclear with regard to whether he ever actually received the system. (Id. at ¶¶ 20–22.) In his Amended Objections, Cunningham states that he did not receive the system and that his dealings with the Safeguard America were in the furtherance

of his research to support this case.  (Doc. No. 85 at ¶¶ 15–17.)  This Court's docket shows that Cunningham is a serial plaintiff in cases involving unsolicited telemarketing.  See, e.g., Cunningham v. Newport Mktg., LLC, No. 3:14-cv-02400; Cunningham v. Park Lane Digital Media, No. 3:15-cv-00467; Cunningham v. Trilegiant Corp., No. 3:15-cv-00989; Cunningham v. Ignite Capital, LLC, No. 3:15-cv-00894; Cunningham v. Endless Access LLC, No. 3:15-cv-00178; Cunningham v. The Altitude Grp., LLC, No. 3:15-cv-00929.[1]

Cunningham identified a number of potential defendants related to the security system marketing scheme and filed this pro se action.  Safeguard America. and Homeland Security, LLC, are corporations whose representatives allegedly spoke to Plaintiff on the telephone.  (Doc. No. 57 at ¶¶ 2, 6, 30.)  RRMS allegedly provides the alarm monitoring service used in the alarm systems installed by Safeguard and Homeland.  (Id. at ¶¶ 4, 42–43.)  Cunningham also named various individual defendants based on their status as officers and/or managers of those entities.  Counts I and II respectively assert claims under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA").  (Doc. No. 57 at ¶¶ 81–84.)  Count III alleges civil conspiracy to violate the TCPA (Id. at ¶¶ 85–86.)  Both the RRMS Defendants and the Individual Defendants have filed motions asking the Court to dismiss Cunningham's claims.  (Doc. No. 58; Doc. No. 70.)  Cunningham, in response to those motions, seeks discovery regarding personal jurisdiction over the Individual Defendants.  (Doc. No. 78.)  The R&R recommends that no discovery be granted and the case be dismissed because Cunningham lacks standing to bring his claims.

## II. ANALYSIS

---

[1]  The Court may take judicial notice of entries from its docket or another court's, although it may not credit disputable facts therein as evidence.  See In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 468 (6th Cir. 2014).

**A. Standard of Review**

Pending before the Court are motions to dismiss pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6).

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." Id. "When considering a factual attack upon the court's jurisdiction, the court may weigh the evidence, and no presumption of truth applies to the plaintiff's factual allegations." Hickam v. Segars, 905 F. Supp. 2d 835, 838 (M.D. Tenn. 2012) (citing Gentek, 491 F.3d at 330). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." Gentek, 491 F.3d at 330.

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 504 (6th Cir. 2014) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)). To defeat the Rule 12(b)(2) motion, the nonmoving party "need only make a prima facie showing of jurisdiction." Id. at 504 (quoting CompuServe, 89 F.3d at 1262). "[A] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal, . . . because we want to prevent nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." CompuServe, 89 F.3d at 1262 (internal quotation and emphasis

omitted).  "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction."  Id.

Rule 12(b)(6) governs dismissal for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) requires the Court to take all the factual allegations in the complaint as true.  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Id.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Id.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  Id. at 679.

## B. Standing

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" required to establish standing.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).  "To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 581 (6th Cir. 2016) (quoting Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606–07 (6th Cir. 2007)).  The Supreme Court has recently emphasized that the requirement that an injury-in-fact be "concrete and particularized" encompasses two

distinct requirements. <u>Spokeo</u>, 136 S. Ct. at 1548. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" <u>Id.</u> (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." <u>Id.</u> Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III.

The injuries associated with unwanted marketing calls may be comparatively slight, but they are both real and well documented. Unwanted telemarketing can be a "nuisance" and "an intrusive invasion of privacy." <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 372 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227). Abusive telemarketing can also "waste the recipients' time" and may even in some cases "impede the free flow of commerce." <u>Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.</u>, 757 F.3d 540, 544 (6th Cir. 2014) (citing <u>Ira Holtzman, C.P.A. v. Turza</u>, 728 F.3d 682, 684 (7th Cir. 2013)). Such intangible harms were no strangers to the courts even before Congress chose to address them— "[a]ctions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." <u>Van Patten v. Vertical Fitness Grp., LLC</u>, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing Restatement (Second) of Torts § 652(B)).

In 1991, Congress, in part due to the interstate character of much telemarketing, elected to combat certain particularly unwelcome telemarketing practices by adopting the TCPA.[2] 47 U.S.C.

---

[2] "The Act bans certain practices invasive of privacy and directs the Federal Communications Commission . . . to prescribe implementing regulations." <u>Mims</u>, 565 U.S. at 371. Among its restrictions, the TCPA "generally prohibits making nonemergency, unsolicited calls advertising 'property, goods, or services' using automatic dialing systems and prerecorded messages to telephones and cellular phones." <u>Van Patten</u>, 847 F.3d at 1041 (quoting 47 U.S.C. § 227(a)(5), (b)(1)(A)(iii)).

§ 227. The TCPA provides for enforcement both by state governments, 47 U.S.C. § 227(g)(1), and private individuals who are the targets of certain prohibited practices, 47 U.S.C. § 227(b), (c)(5). Congress's conclusion that the harms addressed by the TCPA were sufficient to support a private cause of action guides this Court's standing analysis but is not conclusive: although a plaintiff cannot "automatically satisf[y] the injury-in-fact requirement" merely because "a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right," "the judgment of Congress play[s an] important role[ ]" in evaluating whether the injury underlying a statutory cause of action is sufficiently concrete. Spokeo, 139 S. Ct. at 1549. That role is especially pronounced where a harm is concrete but not wholly tangible, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id.

The TCPA was "[p]assed in response to '[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes.'" Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc., 788 F.3d 218, 221 (6th Cir. 2015) (quoting Mims, 565 U.S. at 370–71). A Senate sponsor of the TCPA expressed the public's discontent with unsolicited telemarketing as follows: "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." Mims, 565 U.S. at 752 (quoting 137 Cong. Rec. 30,821–22 (1991)). Hyperbolic though the Senator's comments may be, they highlight Congress's ability, as a body directly accountable to voters, to hear and heed public cries about what injuries are real to them. Congress, presumably in response to the voices of the very people whom the TCPA is drafted to protect, concluded that the real injuries associated with unwanted telemarketing were sufficient to support a cause of action. This Court agrees.

Perhaps recognizing that it cannot persuasively challenge an ordinary consumer's standing under the TCPA, the RRMS Defendants argue that Cunningham lacks standing because he is a "professional TCPA plaintiff" who has filed numerous suits under the TCPA, and therefore he suffered no real injury because he, in fact, welcomed any calls that might support a cause of action. (Doc. No. 59 at 1, 7–9.) The RRMS Defendants model their argument in significant part on the reasoning adopted by the Western District of Pennsylvania in Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016), where that court concluded that a TCPA plaintiff lacked standing because her "only purpose in using her cell phones [was] to file TCPA lawsuits" and therefore she did not experience an actual invasion of privacy. Although the RRMS Defendants at this stage lack the substantial record relied upon by the Pennsylvania court, they seek instead to rely on audio recordings of Cunningham's conversations with the relevant telemarketers, arguing that the recordings are appropriate for consideration either because the calls were mentioned in Cunningham's Complaint or because Rule 12(b)(1) contemplates the possibility of a factual challenge as well as a facial challenge.

Even if the Court considers the calls, however, they tell the Court little more than it can see by looking at its own docket and Cunningham's own admissions. The calls show that Cunningham appears to have been very good at eliciting information from the callers that he could later use in this lawsuit, which the RRMS Defendants suggest demonstrates that he was cultivating a TCPA claim. Cunningham's Second Amended Complaint, though, openly admits that the reason he eventually accepted one of the calls was "to ascertain the identity of the party placing" them, and Cunningham has explained his sleuthing in significant detail himself. (Doc. No. 57 at ¶ 13.) His later pleadings are entirely straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ("The only reason why the Plaintiff faked interest in the calls was to identify the seller of

goods/services that was behind the calls.")).  Cunningham's numerous lawsuits show that he is

acutely aware of his rights under the TCPA and the potential that he could reap monetary rewards

from them.  Whether the Court considers the audio recordings or not, it is safe to say that, when

the telemarketers in this case called a phone belonging to Cunningham, they—presumably

unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned

plaintiff, likely primed and ready to take them to court if their actions violated the TCPA.

Nothing in the Constitution, though, requires a plaintiff to be a naïf.  Litigation is not

college athletics: there is no "amateurs only" rule.  See Murray v. GMAC Mortg. Corp., 434 F.3d

948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional

[plaintiff]' is a dirty word.  It implies experience, if not expertise.  The district judge did not cite a

single decision supporting the proposition that someone whose rights have been violated by 50

different persons may sue only a subset of the offenders.").  Nor is there anything out of the

ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping

a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient

injury.  The statutory damages available under the TCPA are, in fact, specifically designed to

appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like

statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives

for private enforcement of law."  Arnold Chapman & Paldo Sign & Display Co. v. Wagener

Equities Inc., 747 F.3d 489, 492 (7th Cir. 2014).  Designing a cause of action with the purpose of

enlisting the public in a law's enforcement scheme is a well-established tool that can be found in

areas ranging from antitrust[3] and civil rights law[4] to environmental law[5] and false claims.[6] While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. (See Doc. No. 57 at ¶ 78 (stating that Defendants infringed on Cunningham's "right to be left alone")). Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in

---

[3] See Ill. Brick Co. v. Illinois, 431 U.S. 720, 746, 97 S. Ct. 2061, 2075 (1977) (discussing "the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws").

[4] See Fox v. Vice, 563 U.S. 826, 833 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.").

[5] See Moulton v. U.S. Steel Corp., 581 F.3d 344, 350 (6th Cir. 2009) (discussing how plaintiffs "may act as private attorneys general to enforce the Clean Air Act . . . by bringing a citizen suit if the federal and state authorities fail to address their allegations").

[6] See U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 507 (6th Cir. 2009) (discussing, in case involving alleged Medicare fraud, how the False Claims Act "encourag[es] 'whistleblowers to act as private attorneys-general' in bringing suits for the common good" (quoting Walburn v. Lockheed Martin Corp., 431 F.3d 966, 970 (6th Cir.2005))).

similar statutory schemes. The TCPA entitles a plaintiff to statutory damages in the generous amount of $500 per violation—a figure that can be tripled for a willful and knowing violation. 47 U.S.C. § 227(b)(3), (c)(5). The Court ventures to guess that many ordinary people—not merely "professional plaintiffs"—would accept the fleeting invasion of their privacy associated with an unsolicited robo-call for the reward of $1500—or even $3000, if more than one TCPA provision was violated. See Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011) ("We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call."). If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs—or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them. The RRMS Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA.

The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights. The Court sees no authority for the proposition that his privacy interests ceased to exist merely because he realized that he could profit from suing for their invasion.

The Magistrate Judge was similarly unconvinced by Stoops but recommended, more narrowly, that the Court conclude that Cunningham lacked standing because his Complaint suggests that he may have accepted the free home security system that he was offered. (Doc. No.

81 at 8–9.)  That analysis assumes, though, that an individual who ultimately acquiesces to a marketing effort could not have been injured by being inundated by that effort unlawfully and without his consent.  There is nothing inconsistent, though, about wanting a home security system and not wanting to be robo-called about it.  The point of the TCPA is not to protect consumers from offers themselves, but the abusive mechanisms by which those offers are conveyed.  "[I]t is the fact of the call (or calls) that creates the injury sufficient to confer standing."  Ung v. Universal Acceptance Corp., 198 F. Supp. 3d 1036, 1039 (D. Minn. 2016).  That injury would not be undermined if Cunningham ultimately found the Defendants' offer—which could have been conveyed to him through any number of lawful means—worth taking.

The Court therefore concludes that Cunningham has averred a concrete and particularized injury sufficient to confer standing, and the Court will not dismiss his claims on that ground.  The Court reaches this decision without prejudice to any eventual substantive defense based on actions by Cunningham to invite the Defendants' calls, should one be raised and have merit.

## C. Zone of Interests

The RRMS Defendants argue, in the alternative, that even if Cunningham meets the minimum constitutional requirements for bringing suit, he does not have a cause of action under the TCPA because his injury does not fall within the zone of interests that the Act was intended to protect.  The requirement that a statutory cause of action be brought by a person within the statute's protected zone of interests has sometimes been referred to as a "prudential standing" doctrine.  E.g., Latin Americans for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin., 756 F.3d 447, 462 (6th Cir. 2014) ("Prudential standing exists if the interest the plaintiff seeks to protect is within the 'zone of interests' to be protected or regulated by the statute at issue." (citing Friends of Tims Ford v. TVA, 585 F.3d 955, 967 (6th Cir. 2009))).  The Supreme Court,

though, has clarified that "'prudential standing' is a misnomer as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 (2014) (quoting Ass'n of Battery Recyclers, Inc. v. EPA, 716 F.3d 667, 675–76 (2013) (D.C. Cir.) (Silberman, J., concurring)). Because the zone-of-interests test is ultimately rooted in the substantive boundaries of the statute at issue, the Court looks to the "traditional tools of statutory interpretation" to determine "whether [the] legislatively conferred cause of action encompasses [the] particular plaintiff's claim." Id.

The RRMS Defendants' zone-of-interests argument echoes their argument on constitutional standing: they suggest that Cunningham is a professional plaintiff, and that the TCPA only contemplates causes of action arising out of calls to ordinary consumers, a class from which they consider him to be excluded. That argument is flatly refuted by the structure of the TCPA itself. The TCPA does not merely contemplate self-interested plaintiffs—it encourages them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer). The Court cannot read the TCPA and imagine that Congress intended to exclude plaintiffs such as Cunningham. If anything, it intended to recruit them, incentivizing them by offering them such sizable rewards. Cunningham's injuries are well within the zone of interests contemplated by the TCPA, and any interpretation of the TCPA that excluded him would actively frustrate the purpose of the statute.

**D. Count I**

The TCPA makes it generally unlawful "to make any call [without] the prior express consent of the called party . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone

service, . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). While the text of the TCPA attaches liability to the person that "make[s]" the call, the FCC has interpreted the Act to reach "sellers" who can be held liable for the acts of "a third-party marketer . . . under federal common law principles of agency."[7] <u>In re Joint Petition Filed by Dish Network, LLC, et al.</u>, 28 F.C.C. Rcd. 6574 at ¶ 1 (2013) ("<u>Dish</u>"). Those principles, the FCC concluded, "include[e] not only formal agency, but also principles of apparent authority and ratification." <u>Id.</u> at ¶ 28. "Apparent authority" under the TCPA "holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." <u>Id.</u> at ¶ 34. Liability based on ratification arises when a seller "ratifies [the unlawful acts] by knowingly accepting their benefits"—for example, "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." <u>Id.</u> A seller's liability for the activities of a third-party robo-caller must nevertheless be tied into some identifiable agency principle—there is no strict liability merely because the unlawful calls were made "on behalf of" the seller. <u>Id.</u> at ¶ 31.

The RRMS Defendants argue first that they cannot be held vicariously liable because RRMS sells its monitoring services not directly to the consumer but to Safeguard America, and therefore RRMS is not a "seller" as that term is used by the FCC in its interpretation of the TCPA. <u>See, e.g.</u>, 47 C.F.R. § 64.1200(f)(9) ("The term seller means the person or entity on whose

---

[7] The FCC's 2013 guidance on this topic is directed at the TCPA provisions regarding home telephones—which discuss "initat[ing]" a call, 47 U.S.C. § 227(b)(1)(B)—not the provisions involving cellular phones—which discuss "mak[ing]" a call, 47 U.S.C. § 227(b)(1)(A). <u>See Dish</u>, 28 F.C.C. Rcd. at ¶ 25. The Court, however, does not find that the distinction between the two terms robs the FCC's interpretation of any force, and the RRMS Defendants appear to concede that the 2013 guidance applies at least generally to the cellular phone provisions. (Doc. No. 59 at 12.)

behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.") They liken RRMS's position to that of the manufacturer of a product sold at retail pursuant to a retailer's unlawful telemarketing. The FCC has made clear that, insofar as such a relationship severs the possibility of traditional agency liability, it will shield the manufacturer from liability under the TCPA. See id. at ¶ 45 ("In any event, to the extent that [a retail] store is selling on its own account—i.e., it has purchased goods from a manufacturer and is re-selling them—the manufacturer would not be a seller at all."). Whether a party is ultimately responsible for actions under agency principles, however, is highly fact-dependent. Id. at ¶ 46 (detailing factors to consider in vicarious liability inquiry). RRMS identifies no legal grounds for assuming that the mere existence of a middleman categorically defeats the possibility of agency liability under federal common law principles, if RRMS's actions would otherwise be sufficient to give rise to that liability.

The RRMS Defendants argue next that Cunningham has failed to plead with specificity any facts on which he could premise a theory of actual authority, apparent authority, or ratification. Cunningham has pled generally that RRMS, Safeguard America, and Homeland Security all, in some way, "directed the lead generation calls to be placed," but he concedes in the Second Amended Complaint that "it isn't clear absent discovery which entity was directly responsible for contracting" with the callers. (Doc. No. 57 at ¶¶ 29, 32.) Cunningham does, however, sketch out at least some basic details behind the parties' respective roles, alleging that RRMS "authorized Safeguard America to act on their behalf to generate leads and obtain customers for alarm monitoring services." (Id. at ¶¶ 42–43.) The RRMS Defendants have provided a copy of a 2006 contract and 2013 addendum between RRMS and Safeguard America that, they assert, governed

their relationship relevant to this case.[8] (Doc. No. 60-1; Doc. No. 60-2.) Those contracts alone do not, on their faces, expressly authorize Safeguard America to engage in any unlawful telemarketing on RRMS's behalf.

Actual authority, though, may be express or implied. See Bergin Fin., Inc. v. First Am. Title Co., 397 F. App'x 119, 124 (6th Cir. 2010). The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business in the field of security system marketing. Such questions of fact would be inappropriate for resolution on a motion to dismiss. It is similarly premature to draw any conclusion about ratification. Cunningham has alleged an unlawful telemarketing scheme the end result of which was the generation of business for RRMS, and he has alleged that RRMS was an active participant in that scheme. While Cunningham has not alleged every detail of the relationship between the Defendants, the Court recognizes that those limitations are in significant part due to the posture of the case. Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery. As long as he has pled facts sufficient to support a plausibly claim for relief, Plaintiff is not required to illuminate every corner of defendants' relationships at the pleading stage.

Rule 12(b)(6) does, however, require a party to allege at least some facts supportive of any asserted theory of liability and, insofar as Cunningham relies on apparent authority, he has failed to do so. "Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is

---

[8] "[A] court deciding a motion to dismiss can consider documents not attached to a plaintiff's complaint when those documents are referenced in the complaint and central to the plaintiff's claim." Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield of Mich., 655 F. App'x 483, 487 n.3 (6th Cir. 2016). Cunningham's complaint explicitly refers to contracts between RRMS and Safeguard America. (Doc. No. 57 at ¶ 62.)

authorized to act for the principal." Deschamps v. Bridgestone Ams., Inc. Salaried Employees Ret. Plan, 840 F.3d 267, 279 (6th Cir. 2016) (citing Anderson v. Int'l Union, United Plant Guard Workers of Am., 150 F.3d 590, 593 (6th Cir. 1998)).  Cunningham has not alleged any statements by RRMS, as apparent principal, that would manifest that Safeguard America or any other relevant person was its agent for the purpose of the calls.  The Court therefore will dismiss Count I against RRMS insofar as it relies on a theory of apparent authority, but will otherwise leave the count intact.

### E. Count II

The RRMS Defendants argue that Count II should be dismissed because the regulation on which Cunningham relies, 47 C.F.R. § 64.1200(d), cannot give rise to a cause of action under 47 U.S.C. § 227(c)(5).  47 U.S.C. § 227(c)(5) creates a cause of action for any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the *regulations prescribed under this subsection* (emphasis added)."  The regulations to which subsection (c)(5) refers are, by the plain language of the statute, those that the FCC is directed to adopt pursuant to 47 U.S.C. § 227(c)(1)–(4), "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1).  Although subsection (c) grants the FCC some latitude to "compare and evaluate alternative methods and procedures," 47 U.S.C. § 227(c)(1)(a), it is widely associated with the FCC's establishing and maintaining a national "do-not-call list."  See Hamilton v. Spurling, No. 3:11CV00102, 2013 WL 1164336, at *1 n.2 (S.D. Ohio Mar. 20, 2013) ("Pursuant to the authority granted to them under 47 U.S.C. § 227(c), the FCC adopted a national do-not-call registry providing 'residential consumers with a one-step option to prohibit unwanted telephone solicitations,' effective October 1, 2003.")

47 C.F.R. § 64.1200(d) is not directly concerned with the *national* do-not-call list, but the requirement that companies maintain *internal* do-not-call lists: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The Sixth Circuit, however, has expressly referred to 47 C.F.R. § 64.1200(d) as a regulation arising out of 47 U.S.C. § 227(c)(1):

> In addition to the restrictions on automated telephone equipment, the TCPA instructs the FCC to issue regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Accordingly, the FCC issued regulations prohibiting "person[s] or entit[ies] [from] initiat [ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list. 47 C.F.R. § 64.1200(d).

Charvat, 656 F.3d at 443–44. The RRMS Defendants, on the other hand, direct the Court's attention to the Southern District of Ohio's opinion in Burdge v. Association of Health Care Management, Inc., No. 1:10-CV-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011), where it concluded that 47 C.F.R. § 64.1200(d)(4) was "promulgated pursuant to section 227(d) of the TCPA," which directs the FCC to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." 47 U.S.C. § 227(d)(3).

Taken in isolation, it is plausible that 47 C.F.R. § 64.1200(d)(4)—which concerns required disclosures during telemarketing calls—could have been promulgated under 47 U.S.C. § 227(d). Cunningham, however, does not allege only violations of that requirement, but the broader scheme embodied by 47 C.F.R. § 64.1200(d), which includes more substantive requirements such as requirements for adequate training and written policies. 47 C.F.R. § 64.1200(d)(1)–(2). While

many portions of 47 C.F.R. § 64.1200 could arguably be attributed to more than one subsection of the TCPA, the Court ultimately agrees with the Sixth Circuit that the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations. Accordingly, a violation of 47 C.F.R. § 64.1200(d) can give rise to a claim under 47 U.S.C. § 227(c)(5).

The R&R, however, identifies another fault in Count II: Cunningham alleges only calls to his cellular phone. (Doc. No. 81 at 12.) The TCPA generally distinguishes between "residential" lines and other protected lines, although it provides some protections to the owners of both. Compare 47 U.S.C. § 427(b)(1)(B) (setting conditions for use of robo-calls to residential phones) with 47 U.S.C. § 427(b)(1)(A) (setting conditions for use of robo-calls to cellular and enumerated other phones); see also Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1250 (11th Cir. 2014) ("To start with, the case concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any [prohibited] telephone call to any residential telephone line . . . .' [T]he telephone number in question here . . . is a cell-phone number."); Bates v. I.C. Sys., Inc., No. 09-CV-103A, 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines."). A cause of action under subsection (c)(5) must be brought against a party that initiated a "call for telemarketing purposes to a residential telephone subscriber."

By Cunningham's own account, his allegations involve a cellular phone number. It may be that, in some cases, an individual who relies on a cellular phone may nevertheless fall within the definition of a "residential telephone subscriber" under the Act. See Lee v. Loandepot.com, LLC, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016) ("To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for

residential purposes.")  Cunningham, however, has pled no facts sufficient for this Court to draw that conclusion here, and Cunningham's Objections to the R&R identify no faults in the Magistrate Judge's conclusion in this regard; in fact, it is not clear that he objects to this conclusion at all. Count II, then, will be dismissed.

**F. Count III**

The RRMS Defendants argue that Count III should be dismissed because Cunningham's conspiracy allegations are merely conclusory.  "Conclusory allegations of a conspiracy are insufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  Sanders v. Hood, No. 09-CV-14054-DT, 2009 WL 5169990, at *2 (E.D. Mich. Dec. 17, 2009) (citing Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)).  As the R&R correctly observes, Cunningham has offered little, if anything, in response to the RRMS Defendants' arguments on this count.  (Doc. No. 81 at 13.)  Nevertheless, "the movant must always bear [its] initial burden regardless [of] if an adverse party fails to respond[,] . . . [even] in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Rees v. Corr. Corp. of Am., No. 4:15-CV-2050, 2015 WL 7568659, at *2 (N.D. Ohio Nov. 24, 2015) (quoting Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991)).  Accordingly, the Court will examine the Complaint to determine whether the RRMS Defendants have overcome their initial burden of establishing that the Complaint is insufficient with regard to the conspiracy count.

The Sixth Circuit has set forth the general elements of a civil conspiracy claim as follows:

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

Hooks v. Hooks, 771 F.2d 935, 943–44 (6th Cir. 1985) (citing Hobson v. Wilson, 737 F.2d 1, 51–52 (D.C. Cir. 1984); Hampton v. Hanrahan, 600 F.2d 600, 620–21 (7th Cir. 1979)).

In addition to alleging that all three corporate entities at issue in this case "directed" that the unlawful calls be made (Doc. No. 57 at ¶ 29), Cunningham describes the parties' respective roles in the underlying telemarketing scheme as follows:

> [RRMS] sought and wanted Safeguard America to procure customers for their services and paid Safeguard America to do so. In turn, Safeguard America sought customers to buy alarm systems and paid Homeland Security to obtain these customers. Homeland Security and Safeguard America contracted with a telemarketing company to place calls on behalf of Defendant Homeland Security for the purpose of generating leads for the benefit of all parties: Homeland Security, [RRMS], and Safeguard America.

(Id. at ¶ 64.) These allegations, taken together, are sufficient to meet the minimum required for an allegation of conspiracy, particularly in light of "the liberal standards that apply [for pro se litigants] at the pleading stage." See Johnson v. Stewart, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). Cunningham alleges a single plan to market home security systems and services to consumers through unlawful telemarketing. While RRMS may or may not have known every detail about the plan, it shared its general conspiratorial objective and acted in furtherance thereof by making its services available. The Court will not dismiss Count III at this early stage.

## G. Claims Against MacDonnell

The RRMS Defendants also argue that the allegations against RRMS CEO Russell MacDonnell are conclusory and that there is no basis for asserting liability to MacDonnell himself. Cunningham's allegations regarding MacDonnell, like his allegations against the other individual defendants, do not detail any individual actions that would support his personal liability beyond the generic assertions that, as CEO of RRMS, he was ultimately responsible for its involvement in

any actionable calls. (Doc. No. 57 at ¶¶ 53–54.) Such conclusory assertions are insufficient to state a claim for individual liability against MacDonnell. The claims against him will be dismissed.

**H. Claims Against Individual Defendants**

The Court adopts the Magistrate Judge's well-reasoned recommendation that Cunningham's claims against the Individual Defendants be dismissed because the Court lacks personal jurisdiction. (Doc. No. 81 at 10–11.)

## III. CONCLUSION

For the above reasons, the RRMS Defendants' Motion to Dismiss (Doc. No. 58) will be **GRANTED** in part and **DENIED** in part. Individual Defendants' Motion to Dismiss (Doc. No. 70) will be **GRANTED**. Count II will be **DISMISSED** as to all parties, and Counts I and III will be **DISMISSED** as applied to Russell MacDonnell, David Roman, John Coursey, and John Keith. Count I will also be **DISMISSED** insofar as it relies on a theory of apparent authority against RRMS Defendants. Cunningham's request to conduct discovery on the question of personal jurisdiction (Doc. No. 78) will be **DENIED**.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE